## F. W. Cook Brewing Company, Appellant, v. Mike Vaccaro, Appellee.

1. SALES, § 199*—*when title to shipment passes.* Where a contract of sale provides that a shipment shall be f.o.b. cars at the buyer's place of business, a delivery does not take place so as to vest title in the buyer until the shipment is delivered at such place.

2. COMMERCE, § 5*—*when interstate shipments not prohibited.* The citizens of any State have the right to sell and ship any article of commerce to a citizen of another State unless prohibited by Act of Congress.

3. COMMERCE, § 6*—*when importation of intoxicating liquors not prohibited.* Where a person having his place of business in dry territory in this State orders shipments of beer f. o. b. cars at his place of business from a brewery in another State, held such sale and shipment was not prohibited by the Act of Congress passed

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

August 8, 1890, nor in violation of the Local Option Act of this State, J. & A. ¶¶ 4637 *et seq.*

4. INTOXICATING LIQUORS, § 268*—*right to recover purchase price of imported liquors.* Where intoxicating liquors are purchased and imported into dry territory in this State, the fact that the seller may have known that it was the intention of the buyer to sell them unlawfully will not bar a recovery by the seller of the purchase price where. there is no statute prohibiting a recovery under such conditions.

Appeal from the Circuit Court of Williamson county; the Hon. W. W. CLEMENS, Judge, presiding. Heard in this court at the March term, 1914. Reversed and remanded. Opinion filed July 28, 1914.

HARTWELL & WHITE, for appellant.

SAWYER & OTEY, for appellee.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The above entitled causes were consolidated and tried by the court without a jury, by consent, and at the conclusion of the trial the Circuit judge rendered judgment against the plaintiff for costs. The plaintiff appeals and the two cases are by agreement abstracted, argued and tried in this court together. In the abstract the former case is denominated as case No. 272 and the latter case as No. 273. See *post,* 397. The two cases grow out of an order based upon the same contract.

In No. 272, Mike Vaccaro is sued as principal and in No. 273 the appellees are sued as sureties upon the Mike Vaccaro contract. On the seventh day of May, 1909, Mike Vaccaro at Johnston City, Illinois, executed and forwarded to the appellant at Evansville, Indiana, the following agreement, the execution of which was completed on May 9, 1909, at Evansville, Indiana, by the appellant approving and signing the contract:

"This agreement, made and entered into this 7th day of May, 1909, by and between the F. W. Cook

Brewing Company of Evansville, Indiana, and Mike Vaccaro, witnesseth: That the said Brewing Company hereby agrees to give the said Mike Vaccaro the exclusive privilge of selling its draught and bottled beers at wholesale in said town of Johnston City, Illinois, and agrees to sell and deliver to him its beers f. o. b. cars at Johnston City, Illinois, in carload lots at the following prices:   *   *   *   And the said Brewing Company further agrees to pay all freights on empty cooperage, cases and bottles returned to it by the said Mike Vaccaro; furnish ample ice for the preservation of the draught beer in transit; and make allowance and give credit for all bottle beer cases and bottles returned to it.   *   *   *

It is also understood that the said Brewing Company shall not be expected to make any payments or allowances not herein specified. And the said Mike Vaccaro agrees to make settlements and payments whenever demanded by the said Brewing Company or its representatives; take good care of all property of the said Brewing Company intrusted to his care; give special attention to the gathering up and return of all empty cooperage; and that during the continuance of this agreement he will neither sell nor be directly or indirectly interested in the sale of any (beer) other than that of the said Brewing Company.

This agreement shall not be binding upon said Brewing Company until the same has been approved by its President, Vice-President or Secretary and Treasurer, and its corporate seal affixed at Evansville, Indiana. This agreement may be terminated by either party upon ten days notice to the other in writing.''

Upon the back of the foregoing instrument there was indorsed an agreement by Domeneco Rodasta and Antonio Vaccaro to stand as sureties: ''In a sum not to exceed One Thousand Dollars for the faithful performance by the said Mike Vaccaro of all of the agreements and conditions contained in said agreement, hereby guaranteeing that the said Mike Vaccaro will pay said Brewing Company all sums which shall be-

come due from him to it for beer sold to him, including cases and bottles, as well as for saloon fixtures and other merchandise. This shall remain a continuing security for the faithful performance by the said Mike Vaccaro of the conditions and agreement above referred to, and the failure of the said Brewing Company to notify the said sureties of any violation of said agreement by said Mike Vaccaro shall not release said sureties from liability for subsequent violations. Dated May 7, 1909."

It is stipulated by the parties herein that as a result of an election under the Local Option Statute of the State of Illinois, Johnston City became dry territory in December, 1907, and remained "dry" until May, 1910. In a letter bearing date of May 7, 1909, Mike Vaccaro, after executing the above contract transmitted it to appellant and in such letter ordered one car of beer to be sent at once, if the bond was satisfactory. Appellant forwarded the beer to Mike Vaccaro and paid the freight thereon to Johnston City, Illinois. Thereafter Mike Vaccaro made frequent orders of carloads of beer, some of which were shipped to him direct and others to the Circolo Popolara Club, as directed by Mike Vaccaro. This shipping of beer continued long after May, 1910, at which time Johnston City again became wet territory. The total shipments of beer made by appellant to Mike Vaccaro amount to $26,848.20, the last shipment having been made on March 4, 1911. Payments were made upon these shipments from time to time amounting to $25,287.18; there remained a balance of $1,560.52 due from Mike Vaccaro to appellant, to recover which these suits were instituted.

We will first dispose of the case against Mike Vaccaro, No. 272, wherein he is sued as principal. The declaration filed consisted of the common-law counts.

It is contended by appellee that as the contract provided that the beer should be furnished f. o. b. cars

at Johnston City, Illinois, that the title remained in the appellant until its arrival at Johnston City, and that this was a delivery by appellant to appellee at Johnston City and constituted a sale at Johnston City in violation of the local option laws of Illinois, and rendered the contract void, and that no recovery could be had upon such contract for any of the beer so shipped.

We agree with the contention of counsel for appellee, that as the contract provided that the beer should be delivered f. o. b. cars at Johnston City that it contemplated a delivery at this place. There is no doubt but the general rule is that in the absence of an agreement as to the place of delivery that the delivery by the vendor to a common carrier is a delivery to the vendee at the place at which the common carrier received the goods, and that the title to the property vests in the purchaser immediately upon such delivery to the carrier. *City of Carthage v. Duvall,* 202 Ill. 234. If, however, the contract provides that the shipment shall be f. o. b. cars at the vendee's home, or place of business, then the delivery to a common carrier will not be a delivery to the vendee, but it must be delivered to the vendee at his home or place of businss before the title is vested in the vendee. *Olson v. Wabash Coal Co.,* 126 Ill. App. 253.

We are in accord with the contention of counsel for appellee that under the contract and payment of freight, etc., by appellant that appellant delivered the beer to the appellee in carload lots, on board the cars at Johnston City, Illinois, and that if such sale was in violation of and prohibited by law then there could be no recovery. It appears from the evidence that the contract was accepted and its execution completed at Evansville, Indiana, and provided for the delivery of the beer f. o. b. cars at Johnston City, Illinois, and the question here presented for our determination is: Does the sale and shipment in the manner herein pro-

vided violate the local option law of Illinois? As this beer was shipped from the State of Indiana into the State of Illinois, it was undoubtedly an interstate ship-ment, and for this reason counsel for appellant con-tends that such shipment and delivery is not in viola-tion of the local option laws of this State, and that it is protected and exempted from the provisions of this statute by the Constitution of the United States, which provides: "The Congress shall have power  * * * to regulate commerce with foreign nations and among the several States and with the Indian tribes." It has been uniformly held by the Supreme Court of the United States that the citizens of any state have the right to sell and ship any article of commerce to a cit-izen of another State, unless prohibited from so doing by Act of Congress. "Another established doctrine of this court is, that where the power of Congress to reg-ulate is exclusive the failure of Congress to make ex-press regulations indicates its will that the subject shall be left free from any restrictions or impositions; and any regulation of the subject by the States, except in matters of local concern only, as hereafter men-tioned, is repugnant to such freedom." *Robbins v. Shelby County Taxing Dist.*, 120 U. S. 493.

It is quite clear, as we think, that until prohibited by Congress, any citizen may ship beer or other ar-ticles of commerce from one State into another.

The next question that arises is: What prohibition or regulation had Congress made, if any, prior to the making of this contract, and the shipping of this beer? The only regulation pointed out to us, or that we have in our research been able to find, is an act of Congress passed August 8, 1890, which provides: "That all fer-mented, distilled or other intoxicating liquors or li-quids transported into any State or Territory or re-main therein for use, consumption, sale or storage therein, shall upon arrival in said State or Territory be subject, to the operation and effect of the law of

such State or Territory, enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such State or Territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.'' Prior to this enactment of Congress, it was held by the Supreme Court of the United States that in a shipment made by the citizen of one State into another, that so long as it remained in the original package the importer could sell it, notwithstanding such sale was prohibited by a statute of the State into which it was shipped. *Leisy v. Hardin,* 135 U. S. 100. After the passage of the Act of Congress above referred to, it was claimed that by such Act, as soon as the intoxicating liquors came within the borders of the State to which they were imported, that they were at once subject to the control of the State law prohibiting a delivery of them, and a construction of this Act was given by the Supreme Court of the United States in the case of *Rhodes v. State of Iowa,* 170 U. S. 412, in which it is said: ''The *Bowman* case [125 U. S. 465] was decided in 1888, the opinion in *Leisy v. Hardin* was announced in April, 1890, the act under consideration was approved August 8, 1890. Considering these dates, it is reasonable to infer that the provisions of the act were intended by Congress to cause the legislative authority of the respective States to attach to intoxicating liquors coming into the States by interstate shipment, only after the consummation of the shipment, but before the sale of the merchandise, that is, that the one receiving merchandise of the character named should, whilst retaining the full right to use the same, no longer enjoy the right to sell free from the restrictions as to sale created by State legislation, a right which the decision in *Leisy v. Hardin* had just previously declared to exist.'' And the Supreme Court, in giving its conclusions in this case further

says: "We think that interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the State to attach to an interstate commerce shipment, whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee, and of course this conclusion renders it entirely unnecessary to consider whether if the act of Congress had submitted the right to make interstate commerce shipments to State control it would be repugnant to the Constitution." Shortly after the adoption of our local option statute (J. & A. ¶¶ 4637 *et seq.*) its constitutionality was attacked and many points were presented to the Supreme Court of the State of Illinois regarding its validity, and among them the point was made that the local option act was in violation of the interstate commerce clause of the Federal Constitution, and in passing upon that question the Supreme Court says: "Another point made by the counsel is, that the act violates the interstate commerce clause of the Federal constitution, and although that question is not involved in this case and any invalidity of the provision would not effect the act, the position of counsel is not tenable. In the section designed to prevent evasion of the act it is provided that the taking of orders or the making of agreements in anti-saloon territory for the sale or delivery of intoxicating liquors shall be held to be an unlawful selling. We are required to interpret the act in such a way as to uphold it rather than in a way which would invalidate it (*People ex rel. Columbia Const. Co. v. Hinrichsen,* 161 Ill. 223), and it is always presumed that the legislature did not intend to exceed, and have not, in fact, exceeded, their jurisdiction. (Endlich on Interpretation of Statutes, sec. 171; *Stanton v. City of Chicago,* 154 Ill. 23). It is not necessary every time a law is passed that the legislature should specifically state that there is no intent to interfere with interstate commerce or some other subject of which they have no jurisdiction,

The act does not purport to control in any manner the importation of liquor from other States." *People v. McBride,* 234 Ill. 176.

It is contended by counsel for appellee that: "A contract made in one State for the sale of liquor in another, such as would be valid at common law, and which is not shown to be invalid, where made, will enable the seller to obtain an action for the price in the State where delivery is made, notwithstanding, if made in the latter State the contract would have been void. But this rule is of no avail in the face of statutes, such as have been enacted in several States, providing that there shall be no recovery on a contract of this kind when the purchaser buys with a view to violating the laws of his own State, although the contract would have been good where made." We do not regard this rule of law as applicable, as there is no statute in Illinois prohibiting a recovery under such circumstances. The Supreme Court of Illinois, in passing upon a kindred question with reference to the transportation of liquors from another State into this State, says, in classifying the different kinds of nuisances, enumerates three and says the second consists of: "Those which in their nature are not nuisances but may become so by reason of their locality, surroundings or the manner in which they may be conducted, managed, etc." And later on in the opinion says: "As we view this case, under the stipulations in this record the transaction properly falls within the second class of nuisances as above classified, and could only become a nuisance from the manner in which it might be conducted, managed, etc. The right of the citizen to purchase goods for his own consumption from dealers in other States, and the right to have those goods carried and delivered to him, are to be classed among the highest rights of the citizen, and can only be curtailed when, in the manner of conducting the business, they may endanger the health, life or property of other citizens. There is nothing in in-

toxicating liquor inherently dangerous. It can only be said to be dangerous to those who use it. It is not like explosives or dangerous drugs, that may carry with them a menace to the persons and property of others, and there is nothing in the stipulation to disclose that the business as conducted was other than the ordinary course in relation to the carrying and delivering of other articles of trade and commerce that might be, and ordinarily are, carried by such companies. In other words, there is nothing to show that in the method of delivery or in the manner of conducting the business there was anything that could be said to be offensive to the public morals or good order, or could in any way tend to disturb anybody in his tranquility of mind, health or body, safety or right of property. In the absence of such showing it cannot be successfully contended that such business or transaction may be declared to be a nuisance." *City of Carthage v. Munsell*, 203 Ill. 478.

From the views above expressed by our Supreme Court, with reference to the business of selling intoxicating liquors, we are of the opinion that even though liquors are purchased and imported into this State that the fact that the vendor may have known that it was the intention of the purchaser to sell them unlawfully, that such knowledge would not bar a recovery by the vendor unless there was a statute prohibiting a recovery under such conditions.

We are of the opinion that the court erred in rendering judgment against the plaintiff for costs, and for the reasons above set forth the judgment is reversed and the cause remanded.

*Reversed and remanded.*