## Joseph Schlitz Brewing Company, Appellant, v. J. R. Miller et al., Appellees.

INTOXICATING LIQUORS—*when recovery may be had on bond for payment of purchase price of interstate shipment.* Recovery may be had on a bond given to secure a payment of the purchase price of beer shipped by a dealer outside the State to a point within dry territory in the State and consumed there.

Appeal from the Circuit Court of Shelby county; the Hon. ALBERT M. ROSE, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded. Opinion filed October 13, 1915.

CHAFEE, CHEW & BAKER, for appellant.

WHITAKER, WARD & PUGH, for appellees.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

On the 11th day of April, 1910, appellee J. R. Miller, of the City of Shelbyville, Illinois, and the Jos. Schlitz Brewing Company, of Milwaukee, Wisconsin, entered into a written contract in which Miller agreed to handle exclusively the beers of said brewing company for a period of five years at certain stipulated prices free on board cars at Shelbyville, Illinois, to be paid by him to said brewing company. On the back of the agreement was the following: "No order or agreement for the purchase of beer will be considered as binding upon the company until received and accepted at the general office in Milwaukee. All sales of beer, however, ordered, delivered or paid for, are understood and agreed to be made and fully consummated in Milwaukee, Wisconsin. All shipments will be made f.o.b. Milwaukee, and are at the risk of the purchaser from the moment when delivery is made to a regular

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

common carrier.'' On the same day appellee Miller, as principal, and Ross Ward and W. O. Wallace, of Shelbyville, as sureties, executed a bond in the sum of $1,500 payable to said brewing company, which contains the following provisions, among others: ''Whereas, the above bounden principal has agreed to purchase for and during the next five years from the date hereof beer brewed by the Jos. Schlitz Brewing Company (a corporation engaged in the manufacture of beer at Milwaukee, Wisconsin), to the exclusion of all other malt beverages, in consideration whereof said Jos. Schlitz Brewing Company has consented to sell and ship upon the order of said principal from time to time as needed in his business its various brands of beer in conformity to the by-laws, rules and regulations established in that behalf and printed on the back hereof, and at the following prices, to-wit: * * * and to extend to said principal on such purchases a running credit not exceeding $1,500 (inclusive of the amount due and owing the defendant), as long as all purchases in excess of said credit are promptly paid, and the above bounden purchaser complies with all of his obligations in the premises, etc.

''Now, therefore, the condition of this obligation is such that if the above bounden principal, his heirs, executors, or administrators shall faithfully comply with said agreement and shall well and truly pay or cause to be paid to the above named Jos. Schlitz Brewing Company, its successors or assigns, all sums of money which may or shall be owing to said Jos. Schlitz Brewing Company at any time or times when the same become payable according to the agreement aforesaid, and the regulations endorsed on the back hereof without fraud or delay then this obligation to be void, etc.''

On the back of the bond were the same stipulations as were upon the back of the agreement. These stipulations, both on the back of the bond and the agree-

ment, purported to be "By order of the Board of Directors, August Uihlein, secretary."

On June 6, 1912, there was a balance due appellant from Miller under the agreement for the sale of beer of $703.58, which Miller refused to pay, and to enforce the payment of which appellant brought this action of debt upon the bond.

The trial was had before the court without a jury, and a finding and judgment was rendered in favor of appellees, to reverse which this appeal is prosecuted.

It is contended by appellees that the agreement for the sale of beer, and the bond, were each made and executed in the City of Shelbyville, while the same was anti-saloon territory, and are, therefore, void as contrary to the public policy of this State as evidenced by section 13 of the Local Option Act (J. & A. ¶ 4649). Section 13 is as follows: "the giving away or delivery of any intoxicating liquor for the purpose of evading any provision of this Act, or the taking of orders or the making of agreements, at or within any political subdivision or district while the same is anti-saloon territory, for the sale or delivery of any intoxicating liquor, or other shift or device to evade the provision of this Act, shall be held to be an unlawful selling."

The question which has been largely argued is whether the contract and bond and the sales of liquor sued for were executed in Shelbyville or in Milwaukee, Wisconsin. There is an apparent conflict between the provisions of the contract itself signed by the parties thereto, and the stipulation upon the back thereof. The provision in the contract is that the beer shall be delivered f.o.b. cars at Shelbyville, while that in the stipulation on the back thereof states that the sale shall be considered as having been made in Milwaukee, Wisconsin, and completed upon delivery to the common carrier at that place. The contract also provides that the beer was to be delivered subject to

the rules and regulations printed on the back thereof. The bond contains no reference as to where the beer should be delivered.

The Town of Shelbyville is a township in the county of Shelby which is under township organization, and the City of Shelbyville is situated within the township. On April 7, 1908, the Town of Shelbyville became anti-saloon territory under the Local Option Act. On April 21, 1908, the City of Shelbyville became anti-saloon territory under the same act. On April 7, 1910, the proposition: "Shall the Town of Shelbyville continue to be anti-saloon territory?" was submitted to a vote of the town and a majority voted against the proposition, so that the township ceased to be anti-saloon territory. On May 9, 1910, the City Council of the City of Shelbyville passed an ordinance granting liquor licenses within the city on the theory that the last vote of the township above mentioned which embraced the city within its limits took the city with it out of anti-saloon territory. On May 1, 1911, a license was issued by the city to appellee Miller and saloons were continued to be operated in the city until the opinion in the case of *Stead v. Fortner*, 255 Ill. 468, was rendered in October, 1912. The decision of the Supreme Court in that case held that where a township, and a city within the township, have each voted to become anti-saloon territory, but the township subsequently votes against the proposition to continue to be anti-saloon territory, the township vote does not make the city saloon territory nor authorize the issuance of license or the sale of intoxicating liquor in such city. After the above decision was rendered, appellee refused to pay the balance he owed appellant.

Many cases have been cited by appellee in support of the argument that where the public policy of a State has been declared by a legislative enactment forbidding the sale of intoxicating liquors within its border that a contract for the sale of such liquors is void

and no recovery can be had for the price thereof. But all these cases are by the courts of States that have enacted State wide prohibition laws, and in most of which there are provisions declaring such contracts to be void. We do not think that because the Local Option Law of this State grants certain territorial subdivisions thereof the privilege of making themselves anti-saloon territory that a public policy is thereby declared against the sale of intoxicating liquors within the State. The laws of this State give cities, towns and villages the right to license, regulate, tax and prohibit many trades, pursuits and callings; to illustrate, they have the power to license, tax, regulate, suppress and prohibit hawkers and peddlers. Does such a law declare a public policy of the State against the sale of merchandise to hawkers and peddlers because they might attempt to sell it within territory which has prohibited its sale? The answer is too plain for argument. Whether the contract and bond should be held to have been executed within this State, or within the State of Wisconsin, as this beer was shipped from the latter State into this State it was, as held in the case of *F. W. Cook Brewing Co. v. Vaccaro,* 188 Ill. App. 387, undoubtedly an interstate shipment. But it is urged that section 13 of the Local Option Act above quoted declares that the sale of intoxicating liquor under such contract is an unlawful selling. The answer to this proposition is that in the case of *People v. McBride,* 234 Ill. 146, where the constitutionality of the Local Option Act was involved and attacked on the ground that this section of the act violates the interstate commerce clause of the Federal Constitution, the Supreme Court said: ''The act does not purport to control in any manner the importation of liquor from other States.'' There is no statute in this State prohibiting a recovery upon such a contract, and we are in accord with the views expressed by the court

in the case of *F. W. Cook Brewing Co. v. Vaccaro,*
*supra,* that where intoxicating liquors are imported
from another State into this State, as there is no stat-
ute prohibiting a recovery, therefore a recovery can
be had for the sale thereof. The judgment is reversed
and the cause remanded.

*Reversed and remanded.*