DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS

### DURING THE YEAR 1904.

---

## Louis A. Cella, et al., v. The People of the State of Illinois, ex rel. H. J. Hamlin, County Attorney.

1. POOL-ROOM—*injunction to restrain maintenance of.* Equity will restrain by injunction the maintenance of a pool-room where it appears that law-abiding citizens in the vicinity thereof are annoyed and disturbed thereby, and where it appears that by reason of the maintenance thereof property interests in the vicinity are injuriously affected.

Proceeding to restrain maintenance of pool-room. Error to the Circuit Court of Madison County; the Hon. MARTIN W. SCHAEFER, Judge, presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed January 14, 1904.

WISE & McNULTY, for plaintiffs in error.

H. J. HAMLIN, Attorney General, and GEORGE B. GILLESPIE, Assistant Attorney General, for defendant in error.

PER CURIAM.

This was a bill for injunction, in the Circuit Court of Madison County, by defendant in error against plaintiff in error and others. A temporary injunction was issued. The defendants thereafter answered the bill, and upon final hearing the Circuit Court found that the evidence sustained the bill as to all the defendants except O. Canfield, dismissed the bill as to him, and decreed a perpetual injunction

(376)

against the other defendants and their agents and employees.

Among other things not considered by us as material, the bill charges in substance and effect: That on the 1st day of January, 1898, and prior thereto, and from thence until the commencement of this suit, there has been in existence an unlawful voluntary association of persons doing an unlawful business, under the name of the "Madison Turf Exchange," carrying on such business in connection with a certain building commonly called the "Madison Pool Room" which is situated within the corporate limits of the village of Venice, upon a certain tract of land lying partly within the village of Venice and partly within the village of Madison, both villages being in Madison county, Illinois, in close proximity to the Mississippi river; that on the opposite side of the river is situated the city of St. Louis, in the State of Missouri, with a population of many hundred thousand people; that the city of St. Louis is connected with the villages of Venice and Madison by numerous lines of transportation whereby large numbers of persons are easily and quickly transferred from the city of St. Louis to said pool-room and back again to St. Louis; that the managers of said pool-room have made special arrangements with some of said transportation lines for the carrying of persons from St. Louis to Venice and return, for the purpose of inducing large numbers of persons from St. Louis to visit said pool-room; that the business carried on at the pool-room consists of what is commonly known as "book-making," whereby gamblers are permitted and induced to wager money upon horse races; that near said pool-room are large manufacturing plants, employing thousands of men; that the members, agents and employees of said association cause crowds of men and women of evil and dissolute habits, varying in number from five hundred to fifteen hundred, from the city of St. Louis, to congregate daily in said pool-room and on said premises, to make bets on horse races as they occur from time to time in the various parts of the world; that they induce many of the em-

ployees of said manufacturing plants to frequent said pool-room and neglect their employment and squander their earnings; that young men of the vicinity are enticed and lured away from their lawful and profitable pursuits and educated in evil and dissolute habits; that these crowds of dissolute persons caused to be daily congregated by said association, overrun the villages and disturb the peace and good order of the inhabitants, tending to destroy legitimate business and to debauch all that is good, and that disorder and lawlessness habitually prevail by reason of the maintenance of said pool room; that the business carried on at the said " Madison Pool-Room" and on the premises of said association is a nuisance, violative of the rights and detrimental to the interests of all law-abiding citizens of said villages and vicinity, and works irreparable injury to them in their trade and business and in the depreciation of the value of their property. It is further averred that the proprietors of said pool-room and unlawful business remain out of reach of legal criminal process; that when steps are being taken to arrest and prosecute the agents in charge of the business they escape beyond the limits of the state before they can be apprehended; that the persons congregating at said premises are mostly transient persons, only in the state a few hours at a time, and whose names are unknown and in most instances cannot be ascertained; that all attempts to suppress and abate said nuisance by criminal prosecutions have proven ineffective; that under existing conditions the criminal laws of the state and the means of enforcing them are wholly inadequate to suppress and abate said nuisance; that any further attempt to suppress said evil and abate said nuisance by criminal prosecutions would result in endless multiplicity of suits, great expense, tedious delay and uncertain and wholly inadequate results; and that therefore there is no adequate remedy at law. The prayer of the bill is, in effect, that the nuisance be abated and that defendants be perpetually enjoined.

Defendants answered the bill, admitting the existence of the building called a pool-room referred to in the bill,

the location of the villages of Venice and Madison with
reference to the city of St. Louis, and the means of trans-
portation between the city of St. Louis and the villages as
stated in the bill, and denying specifically all the other ma-
terial allegations in the bill. They further answer aver-
ring that if the law is violated in said pool-room, and by
the defendants as alleged in the bill, the proper remedy is
not by injunction, but by indictment or information.

It is contended by counsel for plaintiffs in error that the
evidence in this record does not disclose such case as war-
rants the interposition of a court of equity; that the most
that can be claimed from the evidence is that plaintiffs in
error were engaged in conducting a business prohibited by
law; that the criminal laws of this state provide ample
means for the punishment and suppression of crime, and if
they were guilty of violating such laws they could readily
be punished therefor, and thereby be caused to cease the
further operation of the business; that there is an adequate
remedy at law for the wrongs alleged, and therefore a bill
for injunction cannot be maintained.

While it is true as a general rule that the commission of
a criminal offense cannot be enjoined in chancery, yet if
the proposed offense is also a nuisance, the mere fact that
it is a crime as well as a nuisance, does not deprive equity
of its jurisdiction to restrain and abate it by injunction.
"The bare fact that the statute gives a remedy by indict-
ment does not deprive the court of its equitable powers in
this class of cases." Mink v. Hopeman, 87 Ill. 450. Quoted
with approval in Barrett v. The Mt. Greenwood Cemetery
Assn., 159 Ill. 385. "If the intervention of a court of
equity be warranted by the necessity of protection to civil
rights or property interests, then the mere fact that inci-
dental thereto a crime or statutory offense must be en-
joined, will not operate to deprive the court of its jurisdic-
tion." Christie Com. Co. v. Board of Trade, 92 Ill. App.
604.

While the cases above referred to were not brought in
the name of the People and were instituted to secure the

protection of alleged private rights, yet the same doctrine is enunciated in the case entitled In re Debs, 158 U. S. 564, where the validity of an injunction issued in a suit brought in the name of the United States, by the district attorney for the Northern District of Illinois, was under consideration, it being there said by the court, "something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interference, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of equity arises and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

While counsel for plaintiffs in error assert that many allegations of the bill are not proven, they lay particular stress upon their claim that the charges, that the business of said pool-room violated the rights of persons and property of all well-disposed law-abiding citizens of the villages and vicinity, are not sustained by the evidence. In this view of the evidence we cannot agree with counsel. To our minds the evidence abundantly warrants the conclusion that the business as carried on by plaintiffs in error, was in fact violative of and injurious to the rights of both persons and property of all well-disposed and law-abiding citizens; that it did in a pecuniary sense injuriously interfere with personal rights, and that it did injuriously affect their trade and business, and did depreciate the value of their property. A detailed discussion of the evidence here, would occupy too much space and time, and would be wholly bootless.

Counsel for plaintiffs in error assert that a bill for injunction will not lie to regulate the morals of a community, but that when the state, through its proper officers, seeks the jurisdiction of a court of equity to abate a public nuisance, it must show that such nuisance is an injury to the property or civil rights of the public at large, which it is the duty of the state, as agent of the public, to prevent.

Cella v. The People.

With this statement, as a general rule of law, we find no fault, but this case in our opinion cannot be so classed. Counsel rely very largely upon the cases of State of Indiana v. O'Leary, 155 Ind. 526, and State of Illinois v. Condon, 102 Ill. App. 449. These were both suits for injunction brought to restrain the defendants therein, from maintaining pool-rooms or betting rings, where books were made, bets registered and pools sold upon races. Both these cases were similar in many respects to the one before us and in each case an injunction was refused. In the opinion in the O'Leary case, however, it is said, "there was no proof that any person had been annoyed or disturbed by reason of the maintenance of the gambling house or that any property rights of the state were likely to be in any manner injuriously affected;" and it is further said, "the question, therefore, for decision is whether an injunction may be had on application of the state to suppress a gambling house where no injury to property is shown; where no person has been annoyed or disturbed." In the Condon case, *supra*, it is said, "the injury to property in the vicinity of the race track and upon the routes leading thereto, as alleged in the bill, seems to have been abandoned on the hearing, as counsel in their brief do not refer to it. If this be not so and the affidavits offered by complainant be considered as in evidence (although under the rules of the trial court it is plain they were properly excluded), the answer and accompanying affidavits clearly overcome and outweigh any claim of injury to person or property, by reason of the fact alleged in the bill."

The case before us differs from the two cases last above referred to, in that the evidence clearly shows that the law-abiding citizens of the villages in the vicinity of the pool-room were greatly annoyed and disturbed by its existence and operation, and, further, by the fact that the evidence shows direct financial injury to real estate in the vicinity, and the loss of rents and store bills to the citizens of said villages. In our opinion, unless the relief prayed in the bill can be granted, the evidence warrants the conclusion that the law-abiding citizens most directly interested

in this case, will be driven to the alternative of continuing to suffer intolerable annoyance and disturbance and great financial injury amounting to an insufferable nuisance, or of disposing of their property and business for what it may bring, and abandoning their homes and going with their families elsewhere, to their great loss, to the great public loss to the community in question and to the state.

We fully agree to the doctrine laid down in the O'Leary case and approved in the Condon case above referred to, that "the (mere) apathy or sympathy of the local community and the negligence of public officers, which prevent a criminal prosecution or render its result doubtful, cannot be regarded as a reason why a civil action should be substituted for a criminal proceeding," but the case at bar does not fall wholly within that class.

We are of opinion that the Circuit Court was warranted in finding that all the material allegations of the bill were sustained by the evidence, and that complainant was entitled to the relief prayed.

We find no substantial error in the record. The decree of the Circuit Court is affirmed.

*Affirmed.*