## The People of the State of Illinois ex rel. Roy C. Martin, State's Attorney of Franklin County, Defendant in Error, v. Joe Kuca, Plaintiff in Error.*

1. INJUNCTION—*purposes under Prohibition Act.* Sections of the Prohibition Act relating to injunctions are for the purpose of restraining the maintenance of a nuisance and for the abatement thereof, and not for the purpose to enjoin the commission of a crime or misdemeanor.

2. CONTEMPT—*illegal possession of liquor not triable in proceeding.* The question whether a defendant violated the law against possessing intoxicants must be tried on indictment or information before a jury and not on hearing for contempt for violation of a liquor nuisance injunction.

3. INJUNCTION—*as not applicable to enforce criminal law.* Courts of equity will not exercise their injunctive powers to enforce the criminal law by restraining criminal acts.

* Received from clerk of Appellate Court. August 8, 1927.

. 4. CONTEMPT—*what record must show in liquor proceeding.* Although a proceeding for contempt of a liquor nuisance injunction is summary, the record must show in what particular the party charged with contempt has violated court's order.

5. CONTEMPT—*when information for injunction contempt will be examined by the Appellate Court.* In order to determine whether a court exceeded its jurisdiction in sentencing for alleged contempt in violating a liquor nuisance injunction, the Appellate Court will examine the information to ascertain the nature of the alleged contempt.

6. CONTEMPT—*liquor nuisance injunction as not conferring jurisdiction over crime.* If an information charging contempt of an injunction against maintaining a liquor nuisance is found to charge a crime, the court will have no jurisdiction to find the defendant guilty of contempt thereunder.

7. INJUNCTION—*when objection to double injunction order barred on review.* By appearing at a subsequent term to that at which he had consented to a liquor nuisance injunction against him and consenting to a second order, the defendant cannot raise in the Appellate Court for the first time any question as to the validity of the second order.

8. CONTEMPT—*how far contempt of liquor nuisance injunction may be punished.* Sentence of fine and imprisonment for contempt of a liquor nuisance injunction is authorized by statute which is the only authority for such order, but a further sentence of working out on the streets any fine unpaid is not so authorized and such order demands reversal.

Error by defendant to the County Court of Franklin county; the Hon. S. M. WARD, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded. Opinion filed March 10, 1924.

MOSES & PULVERMAN and LAYMAN & JOHNSON, for plaintiff in error.

ROY C. MARTIN, for defendant in error.

MR. JUSTICE BOGGS delivered the opinion of the court.
· Plaintiff in error, Joe Kuca, was found guilty of contempt of court by the county court of Franklin county for the violation of an injunction, and was sentenced to the county jail for ten months and was fined $1,000 and costs of suit. It was further ordered

by the court that "if, at the expiration of the jail sentence, the fine was not paid in full, that the plaintiff in error was adjudged and ordered to work out said fine and costs in the streets and alleys of the City of Benton, under the direction and supervision of the commissioner of streets and alleys, at the rate of $1.50 per day until said fine and costs should be paid in full, and plaintiff in error to remain in jail while not at work." To reverse said judgment, this writ of error is prosecuted.

The bill for injunction was filed by the People of the State of Illinois, on relation of Roy C. Martin, State's Attorney of Franklin County, against plaintiff in error and Josephine Kuca, his wife, running to the January, 1923, term of the county court, charging therein that plaintiff in error and his said wife were in the occupation and possession of a certain building therein described, in West Frankfort; that plaintiff in error had been operating in said building a general store and a pretended soft drink parlor "when in truth and in fact the same has been used by him as a place where intoxicating liquor is unlawfully kept, the same being sold in violation of the laws of the State of Illinois, as complainant is informed and believes, and that the said Joe Kuca in said building unlawfully possesses stills for the manufacture of intoxicating liquor; and that said place is a common nuisance as defined by section 21 of an Act known as the Illinois Prohibition Act." A temporary injunction was issued, restraining the plaintiff in error and his said wife "from using or permitting the said building to be used as a place where intoxicating liquor is unlawfully sold and unlawfully kept." Thereafter, at the January term of said court, said matter came on for hearing on the motion of the People, for an order or decree making said temporary injunction perpetual. The plaintiff in error and his said wife appeared in open court, and consented that a decree should be entered by the court

making said injunction perpetual. Thereupon the court entered the following order: "That the defendants Joe Kuca and Josephine Kuca be enjoined perpetually from unlawfully keeping or possessing intoxicating liquor in any place in the State of Illinois.

"It is therefore ordered and adjudged by the Court that the said Joe Kuca and said Josephine Kuca be enjoined from using or permitting the building located on lot Eight (8) in Block Six (6) in South Park Addition to the City of West Frankfort, Illinois, as a place where intoxicating liquor is unlawfully kept."

Said order further provided for the giving of a bond by said parties for the opening of said building, as provided by statute.

Thereafter, on June 4, a petition for a writ of attachment was filed in the clerk's office of said court by the state's attorney, alleging that plaintiff in error "had knowledge of the provisions of said injunction, and although he was advised by the Court in open court as to the consequences of same, that he did, on June 2, 1923, in Franklin county, Illinois, unlawfully possess intoxicating liquor in violation of the provisions of the Illinois Prohibition Act, and in total disregard and disrespect of the orders of the court in said decree, which perpetually enjoined him from again unlawfully possessing intoxicating liquor at any place in the State of Illinois; and that by reason thereof the said Joe Kuca has wilfully violated the temporary injunction rendered against him on January 8, 1923." A hearing was had, and thereafter, on June 22, the court made the following finding: "The Court finds from the evidence that the matters and things alleged in said petition are true in substance and in fact, and that the defendant Joe Kuca is in contempt of court by reason of his having violated the provisions of the injunction heretofore granted against him, as charged in said petition." And thereupon the court sentenced said plaintiff in error, as above set forth.

The principal ground relied upon for a reversal of said judgment is that the court erred in adjudging plaintiff in error to be in contempt of court for the unlawful possession of liquor in violation of the order of the court to the effect that "the defendants, Joe Kuca and Josephine Kuca, be enjoined perpetually from unlawfully keeping or possessing intoxicating liquor in any place in the State of Illinois," it being the contention of counsel that that provision of said order was beyond the jurisdiction of the court and therefore void.

Evidently the trial court, and counsel representing the People, lost sight of the provisions of the Prohibition Act providing for writs of injunction. Section 21 of said act, Cahill's St. ch. 43, ¶ 21, defines what shall constitute a nuisance, as follows: "Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this Act, or where any mash, still or other property designed for the illegal manufacture of liquor is kept, and all intoxicating liquor, mash, still or other property kept and used in maintaining the same, is hereby declared to be a common nuisance; a single unlawful sale or barter, or a single act of manufacturing liquor unlawfully shall constitute a nuisance as herein defined." Section 22, Cahill's St. ch. 43, ¶ 23, provides, among other things: "Upon the trial of the cause, on finding that the material allegations of the petition are true, the court shall order that no liquor shall be manufactured, sold, bartered or stored, in such room, house, building, boat, vehicle, structure, or place, or any part thereof." A study of the various sections of the Prohibition Act relating to injunctions will disclose that they are to issue for the purpose of restraining the maintenance of a nuisance, and for the abatement thereof and not for the purpose of enjoining the commission of a crime or misdemeanor. The petition on which the contempt pro-

ceeding is based does not set forth a violation of the injunction so far as it pertains to the maintenance of a nuisance in the building referred to. It is directed to an alleged violation by unlawfully possessing liquor contrary to the provisions of said injunction order. Section 3 of said act, Cahill's St. ch. 43, ¶ 3, makes it a misdemeanor to possess intoxicating liquor for an unlawful purpose, and other sections of the act provide a penalty therefor. If plaintiff in error has violated the law by unlawfully possessing intoxicating liquor, he should be punished therefor under the provisions of the act relating thereto. That question, however, must be tried by a jury on an indictment or information specifically charging him with the violation of said statute making it a misdemeanor to possess intoxicating liquor for an unlawful purpose. It was not the intention of the statute to take away from the individual the right of trial by jury where charged with violation of the Prohibition Act.

It is the contention of counsel for the People that the Prohibition Act makes the injunction order personal against those to whom it is directed, and on them throughout the state. There is some language in the act which might bear out that construction; however, this fact must not be lost sight of, that the injunction authorized by the statute has for its ultimate purpose the enjoining of a nuisance, and such injunctions should therefore be limited to that purpose. Where acts complained of violations of the criminal law, courts of equity will not, on that ground alone, interfere by injunction to prevent their commission, as they will not exercise their powers for the purpose of enforcing the criminal law by restraining criminal acts. *People v. Prouty,* 262 Ill. 218; *People v. Mussatto,* 216 Ill. App. 519; 14 R. C. L. sec. 78. In *People v. Prouty, supra,* the court, at page 221, in discussing this subject, says: " 'The court has no jurisdiction in matters merely criminal or merely immoral which do not affect

208        APPELLATE COURTS OF ILLINOIS.

People ex rel. Martin v. Kuca, 245 Ill. App. 202,

any right to property.' (Citing *Sheridan v. Colvin*, 78 Ill. 237.) 'It is no part of the mission of equity to administer the criminal law of the State or to enforce the principles of religion and morality, except so far as it may be incidental to the enforcement of property rights, and perhaps other matters of equitable cognizance.' (*Cope v. Fair Association of Flora*, 99 Ill. 489.) 'Injury to property, whether actual or prospective, is the foundation upon which the jurisdiction of courts of equity rests.' (*People v. McWeeney*, 259 Ill. 161.) 'Again, it is objected that it is outside of the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned. A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature.' (*In re Debs*, 158 U. S. 564.)''

While a contempt proceeding is a summary one, at the same time the record must show in what particular it is charged that the party who is sought to be adjudged in contempt of court has violated the court's order. Section 25 of the Illinois Prohibition Act, Cahill's St. ch. 43, ¶ 26, provides, among other things: ''The proceedings for punishment for contempt shall be commenced by filing with the clerk of the court from which such injunction issued information under oath setting out the alleged facts constituting the violation, whereupon the court or judge shall forthwith cause a warrant to issue under which the defendant shall be arrested. A trial may be had upon affidavits, or either party may demand the production and oral examination of the witnesses.'' It follows, therefore, in this character of cases, that in order to determine whether or not the court exceeded its jurisdiction, the information filed, charging the alleged contempt, must

be examined for the purpose of ascertaining the nature of the alleged contempt. In this case plaintiff in error is charged with unlawfully possessing "intoxicating liquor in violation of the provisions of the Illinois Prohibition Act," etc. Said order amounted in effect to an injunction against the commission of a crime or misdemeanor. The court therefore had no jurisdiction to enter such order, and plaintiff in error could not be legally adjudged in contempt for disobedience thereof. "A party cannot be guilty of contempt of court for disobeying an order which the court had not authority of law to make." *Leopold v. People,* 140 Ill. 552, 557; *Weigley, Bulkley & Gray v. People,* 51 Ill. App. 51. We therefore hold that the information filed by the state's attorney, and the finding of the court adjudging plaintiff in error in contempt, were not sufficient on which to base said order. The information does not charge and the court does not find him guilty of a violation of the injunction so far as it pertained to the maintenance of a nuisance. Sections 21 and 22, Illinois Prohibition Act.

The question was raised in this case by plaintiff in error, as to whether or not the court had jurisdiction to enter the injunction order issued by it at the January term, 1923, for the reason that the record discloses that at the December probate terms of said court a like order had been entered, by consent of the plaintiff in error and his wife, Josephine Kuca. As plaintiff in error entered his appearance at the January term of the county court of said county, and consented to the issuing of said injunction order, waiving any and all errors that might be involved therein, he has barred himself from raising the question in this court for the first time. It appears from the argument of counsel for the People that the reason for having the order entered at the January term was that the statute provides that county courts shall have jurisdiction to issue injunction orders under the Prohibition Act, and

the state's attorney was of the opinion that the county court at its probate term would not have such jurisdiction, and for that reason the matter was heard at the January term of said court. Plaintiff in error having acceded thereto, he is not in a position to question it in this court for the first time.

The judgment in this case cannot be permitted to stand for another reason. In the order adjudging plaintiff in error to be in contempt, the court, in addition to the jail sentence and fine, ordered that plaintiff in error, in event said fine was not paid at the expiration of his jail sentence, should work out such fine and costs on the streets and alleys of the City of Benton, as hereinabove set forth. Section 25 of the Prohibition Act, Cahill's St. ch. 43, ¶ 26, fixes the punishment that the court may inflict for a violation of the injunction order provided for therein, as follows: "Any person found guilty of contempt under the provisions of this section shall be punished by a fine of not less than $500.00 nor more than $1,000.00 or by imprisonment of not less than ninety days nor more than ten months or by both fine and imprisonment." No provision is made for an order that the party fined shall work out such fine. Since the statute fixed the punishment, the court is limited thereby. "Since a charge of contempt is not a charge of crime, to be tried by a jury, penal service such as hard labor cannot be imposed on one imprisoned for contempt; nor can imprisonment in a house of correction be imposed as a penalty for contempt." 13 C. J. p. 82, sec. 140. Courts are not authorized to make orders of this character except by statutory provision. The only statutory provision that we know of in this State providing for an order of this character is section 10, div. XIV, Criminal Code, which provides: "Any person convicted, in a court of this State having jurisdiction, of any crime or misdemeanor, the punishment of which is confinement in the county jail, may be sentenced by the court in which

such conviction is had, to labor for the benefit of the county, during the term of such imprisonment, in the workhouse, house of correction, or other place provided for that purpose by the county or city authorities.'' Cahill's St. ch. 38, ¶ 783. That section, however, is only applicable to persons convicted ''of any crime or misdemeanor'' punishable by confinement in the county jail. As a contempt is neither a crime nor a misdemeanor, this section would have no application to plaintiff in error.

For the reasons above set forth, the judgment of the trial court will be reversed and the cause will be remanded.

*Judgment reversed and remanded.*