People of the State of Illinois ex rel. George F. Barrett, Attorney General, Appellees, v. A. C. Fritz et al., Appellants.

218

Heard in this court at the October term, 1942. Opinion filed October 30, 1942.

KARNS & BANDY, of East St. Louis, for certain appellants.

RAYMOND B. HENDRICKS, of East St. Louis, for certain other appellants.

GEORGE F. BARRETT, Attorney General, for appellees.

MR. JUSTICE STONE delivered the opinion of the court.
On the 3rd day of December, 1940, the Attorney General of the State of Illinois in his official capacity, filed in the circuit court of St. Clair county his certain complaint in equity directed against defendants charging them with conspiring, confederating, and agreeing to commit and committing public nuisances, which

were alleged to exist throughout the State of Illinois. Such alleged nuisances were alleged to consist of open and notorious violations of the gambling laws of Illinois, with reference to the operation of gambling houses and clubs, "pin ball" machines, slot machines, bookmaking, and pool selling, and many other alleged violations in connection with and as part and parcel of such practices.

The complaint is a large document. It originally named 1358 defendants. By amendments other defendants were added until said complaint as amended contains in round numbers 1400 defendants. These defendants have their domiciles in all parts of the State. Many who do not live in Illinois are referred to as conspirators. Many institutions such as newspapers, telephone and telegraph companies and others are made parties defendant. Upon the presentation of this amended complaint to the trial court, on motion of plaintiff a temporary injunction was ordered without notice granting the relief prayed in the complaint. The temporary injunction was issued and served in pursuance thereof. Most of the defendants answered the complaint. Some two dozen defendants whose names appear in the record but are not recited here filed motions to dismiss the complaint and dissolve the injunction. They also filed motions for change of venue.

Upon hearing, all of these motions were denied. Such defendants elected to stand by their motions and refused to plead further. The trial court then entered its decree on the pleadings finding the defendants guilty of the offenses charged in the complaint and making the injunction permanent as to them.

From this decree said defendants have appealed to this court.

The Attorney General contends that said complaint charges in apt words, substantially as follows: "That the named defendants and others named in the com-

plaint entered into combinations, conspiracies and agreements with each other to:

(a) Own, operate or maintain bookmaking and pool selling establishments, and to furnish the paraphernalia, equipment and services in connection therewith, contrary to law.

(b) Own, operate or maintain gambling houses and clubs contrary to law.

(c) Own, operate or maintain slot and 'pin ball' machines contrary to law.

Said conspiracies, combinations and agreements to be consummated in full or in part in St. Clair county, Illinois.

That the operation of the bookmaking and pool selling establishments, gambling houses and clubs, slot and 'pin ball' machines, were and did constitute public nuisances contrary to law.

That the operation of the pool selling and bookmaking establishments were calculated to and did encourage disrespect and contempt and a disobedience of the laws of Illinois and did subvert common decency and good morals and produced within the State of Illinois the following deleterious effects, among others:

1. It has induced citizens and residents of the State of Illinois and St. Clair county to lead an idle and dissolute life;

2. It has induced men and women of limited means within the State of Illinois and St. Clair county to spend upon wagers and bets on horse races money necessary for the support and maintenance of themselves and their minor children;

3. It has induced men and women receiving public aid and relief to wager upon horse races, and thus waste money raised for their support by taxes, thereby unnecessarily increasing the tax burden of the people of the State of Illinois;

4. It has contributed to the delinquency of minors in the State of Illinois and in St. Clair county by openly glorifying gambling and evasion of the laws;

5. It has caused citizens and residents of the State of Illinois and in St. Clair county to lose their regular employment, because they frequented such establishments and, on occasion, lost money entrusted to them by their employers;

6. It has attracted undesirable characters to the State of Illinois and to St. Clair county to the detriment of law and order therein;

7. It has caused the congregation at said bookmaking establishments of a large number of people, thereby contributing to a disturbance of the peace and quiet of the neighborhood;

8. It has caused a disrespect for the law and local law enforcing agencies, because of the inability or failure of such law enforcing agencies to suppress such establishments;

9. It has caused a lowering of property values in the neighborhood where such bookmaking establishments are being operated, because of the attraction of certain low and dissolute characters and the disturbance of the peace.

That in each and all of said particulars, the existence, operation, maintenance and conduct of said bookmaking establishments have interfered with the comfortable enjoyment of life and property by the entire community and neighborhood adjacent to each of said establishments, and by a large number of persons within the county of St. Clair and elsewhere in the State of Illinois.

That the operation and maintenance of slot and 'pin ball' machines did encourage disrespect and contempt and a disobedience of the laws of Illinois and did subvert common decency and good morals and produced within the State of Illinois the following deleterious effects, among others:

1. It has induced men and women of limited means in St. Clair county and in the State of Illinois to gamble in said machines;

2. It has induced minors and children of immature age to gamble and has openly glorified gambling and evasion of the law;

3. It has caused a disrespect for law and law enforcing agencies, because of the inability or failure of such law enforcing agencies to suppress such establishments.

That the operation and maintenance of gambling houses and clubs did encourage disrespect and contempt and a disobedience to the laws of Illinois and did subvert common decency and good morals and produced within the State of Illinois the following deleterious effects, among others:

1. It has induced citizens and residents of St. Clair county, Illinois, to lead an idle and dissolute life;

2. It has induced men and women of limited means within St. Clair county, Illinois, to spend on gambling, money necessary for the support and maintenance of themselves and their minor children;

3. It has induced men and women receiving public relief to gamble and thus waste money raised for their support by taxes, thereby unnecessarily increasing the tax burden of the people of the State of Illinois;

4. It has contributed to the delinquency of minors in St. Clair county, Illinois, by openly glorifying gambling and evasion of laws;

5. It has attracted undesirable characters to St. Clair county, and the State of Illinois, to the detriment of law and order therein;

6. It has caused the congregation at said gambling houses or clubs of a large number of people, thereby contributing to a disturbance of the peace and quiet of the neighborhood;

7. It has caused a disrespect for law and law enforcing agencies, because of the inability or failure of such law enforcing agencies to suppress such establishments.

In each and all of said particulars, the existence, operation, maintenance and conduct of said gambling

houses or clubs have interfered with the comfortable enjoyment of life and property by the entire community and neighborhood adjacent to each of said establishments and by a large number of persons within the county of St. Clair and the State of Illinois.

That because of the nature of the illegal action of defendants and methods employed by them to accomplish their scheme and purpose, and the great number of persons who have combined with them in the said illegal, unlawful and oppressive combination and confederation, the People of the State of Illinois have suffered and are now suffering irreparable damage and mischief and have no adequate remedy at law, and 'any attempt to attain such remedy would involve a multiplicity of suits.

The complaint further alleged that the State of Illinois is without adequate remedy at law to prevent the defendants from carrying out said conspiracies, and from doing the other unlawful acts herein set forth unless this Honorable Court does, by its injunction, prevent and restrain defendants, and each of them, from carrying into effect said unlawful conspiracies and from doing the other said unlawful acts.''

The defendants' motions to dismiss the complaint and dissolve the injunction, in some instances, joined a number of defendants. Other motions were made by individual defendants. These motions in the main were alike but different reasons were assigned in several instances. We believe, however, that the following contains a recital of all objections raised by any and all of said defendants appellants here.

The complaint wholly fails to state a cause of action.

Complaint does not allege any facts which tend to show these defendants have participated in any conspiracy with the other defendants named in said complaint.

Complaint does not state any facts showing or tending to show that if other defendants participated in

a conspiracy to violate the law that these defendants had any knowledge or were party to such conspiracy.

Complaint does not state facts which warrant a court of equity in granting relief.

Plaintiff has full, adequate and complete remedy at law.

There is a fatal misjoinder of parties defendant.

The allegations of the complaint consist of mere conclusions.

This proposed proceeding would deprive these defendants of their constitutional guarantee of trial by jury, and would subject them to a trial upon charges involving alleged criminal offenses without according them the protection that is given to a defendant in a criminal case; the protection of the presumption of innocence and the requirement that the prosecution must prove its case beyond a reasonable doubt.

Complaint is predicated upon the fallacious theory that these defendants will, unless restrained, violate criminal laws of this State in relation to gambling. The presumption of guilt, or the presumption that one will violate a statute, is repugnant to law and opposed to the democratic theory of government. The theory upon which this complaint is predicated is un-American, dictatorial and should not be countenanced in an American court.

One un-American result of this action being sustained would be that every citizen as defendant would become the ward of this court; each defendant would lose his liberty, independence and inalienable rights that inhere in and should be enjoyed by every American society; each defendant would be answerable to this court permanently throughout the future for all of his daily conduct; a bureaucracy would be established in this democracy with the court usurping and administering the dictatorial powers of an autocrat.

This court is without jurisdiction to try these defendants.

That equity has power to abate by injunction a public or private nuisance, even though the keepers thereof may be prosecuted criminally is in our judgment without doubt. In the case of *Stead v. Fortner,* 255 Ill. 468, a saloon was run during prohibition days in utter violation of the law. The keeper thereof could have been prosecuted criminally, of course, but nobody would prosecute; the State's Attorney refused, and the people of the community who evidently liked to have the saloon, would not inform. The Attorney General brought suit in equity to abate the nuisance. The Supreme Court held that a court of equity had plenary power to abate such nuisance and affirmed the decision of the trial court so abating it. To the same effect is *People v. Clark,* 268 Ill. 156. This was a bawdy house. The inmates, of course, could have been prosecuted criminally for various high crimes and misdemeanors, but the place was a public nuisance and was abated by injunction. *People v. Smith,* 275 Ill. 256 is another case of bawdy house. All of these cases were against premises and the use of them in violation of the law. Equity intervened and stopped these violations by injunction. *Cella v. People ex rel. Hamlin,* 112 Ill. App. 376 is an injunction directed against a pool room, which by its conduct had become a nuisance. This case emphasized the fact that a place—a nuisance injurious to public and private rights, must exist, not merely the violation of the law. In point also is sec. 10, R. C. L., sec. 91, p. 341, also 21 C. J. 155, sec. 136.

We think the distinction is clear. If some institution or individual or set of individuals should establish a bawdy house across from any of our homes and the place should become notorious, any one of us could complain and have the place enjoined, either as a private nuisance or as a public nuisance; and this notwithstanding the fact that the inmates thereof might be prosecuted criminally.

Here, however, equity stops. It cannot enjoin fornication as such any more than it can enjoin murder, rape, mayhem· or robbery. It is only when these crimes are carried on in a manner that makes the place of their activity a nuisance that equity intervenes. In the cases of the above bawdy houses the injunctions run only to the premises. They do not mean that the inmates may not carry on their practices in other places. It is the place of the nuisance which is enjoined.

The cases upon which plaintiff relies make this distinction very clear. In *Stead v. Fortner, supra,* it is said:

"A court exercising equitable jurisdiction will not restrain, by injunction, the commission of illegal or immoral acts, and will not enjoin one engaged in the sale of liquor from making sales which are punishable by the criminal law."

In *State of Illinois v. Zimmerman,* 317 Ill. 197, our Supreme Court said:

"The General Assembly has the power to declare that any place kept and maintained for the illegal manufacture and sale of intoxicating liquors shall be deemed a common nuisance and be abated as such and at the same time to provide for the indictment and trial of the offender."

There are numberless cases to the same effect.

Granting the ability in a court of equity to enjoin places which have become public nuisances, how then can 1400 persons, places and institutions be made parties in interest in a complaint directed against places which have become nuisances? Plaintiff has sought to do so by alleging, or claiming to have alleged, that these 1400 persons, places and institutions, scattered throughout the state, are in a conspiracy to maintain the nuisances. Section 139 of our Criminal Code makes conspiracy to commit an unlawful act a

criminal act and punishable as such. This section was followed in *People v. Miller*, 352 Ill. 537. This, by the way, is the leading case relied upon by plaintiff that the allegations of conspiracy are ample and sufficient. This is a criminal case,—a prosecution under an indictment, and has nothing in common with the allegations in the complaint at bar. Incidentally, in this case the People did not seek to enjoin Miller and his cohorts from unlawfully granting other licenses, but on the other hand, pursued the remedy prescribed by statute, that is, a criminal prosecution, and found it abundantly adequate.

The complaint is directed against two distinctive groups of people, one charged with conspiracy and violating numerous public statutes in regard to horse racing; the other, those engaged in conducting various kinds of gambling houses and clubs wherein are played dice, card games and other devices. The third group is listed as those who, in St. Clair county, keep and operate slot machines in violation of the statute prohibiting use of such machines for gambling purposes. The acts of this third group as entering into a common scheme of conspiracy are only inferentially pointed out under a general assertion against all defendants that they entered into a conspiracy.

As to the first group, the complaint states that they were engaged in the conspiracy. And then it states that there is another group of conspirators, *viz*: said second group. The complaint comtinues general allegations that defendants conspired. Such are only statements of conclusions.

It thus appears that the complaint seeks in one transaction to enjoin two distinct groups of law breakers, engaged in business wholly unrelated in nature, type and location.

It is the general rule of equity pleading that if a bill contains several matters of a distinct and inde-

pendent nature against civil defendants, it is multifarious. (*North American Ins. Co. v. Yates,* 214 Ill. 272, 284.)

If it is proper practice to join such two distinct groups of persons who are charged with violating the various laws of Illinois, then the complaint could have included a third group of law breakers and a fourth and a fifth and so on, without limit. This complaint made over 1300 persons, parties defendant. They lived and conducted their various types of business in almost all of the larger cities and in the various counties of Illinois.

Had a third group of persons alleged to be law breakers, such as those conducting houses of ill-fame, their inmates and owners of property, been included, it may have been that thousands of additional persons would have been made defendants, conducting their illegal business in every city, village and county in the State. If to that had been added other groups of law breakers, automobile drivers; husbands abandoning and failing to support their wives and children; cigar and restaurant proprietors, exhibiting in their places of business slot machines or punch boards; those in jails charged with theft and other types of crime they may be grouped,—the multitude of defendants could be grouped and made defendants, running into the enormous number of thousands.

It seems to us that the theory of this complaint enjoining such two distinct groups, defeats its own purpose. If such practice were permissible, equity would sweep aside and usurp the vast judicial system of this State, without restraint.

The complaint does not allege facts showing a common scheme and conspiracy between the numerous defendants in such two groups, nor of one defendant with another in the same group.

The complaint is very lengthy. In regard to illegal endeavors connected with horse racing, which by stat-

ute is a legalized business, many facts are recited paragraph by paragraph. In similar paragraphs the business in which the divers certain defendants have engaged is set out, references are made to statutes and statements are made that the operation of the business is in violation of the statute. In such paragraphs the various types of business also fall into various groups. Some defendants are engaged in the printing business and are alleged to have printed certain documents, described and listed. Some defendants are alleged to operate bookmaking establishments. Some defendants are engaged in contracting business and installation of radios. Some defendants are engaged in public service business such as telephone transmission, over their lines telephone messages are transmitted on some subject connected with horse racing. Many paragraphs recite the names and places of residence of the respective defendants in the various cities and counties of Illinois.

Some paragraphs list as defendants some of the most outstanding banks, trust estates and prominent persons in Chicago as being conspirators in that they own or, as trustees or executors, represent real estate in which bookmaking and pool selling establishments are operated. Other paragraphs list large numbers of defendants, who, as plaintiff says he is informed, either own or operate bookmaking establishments, furnish information or material and who are located in various cities and counties other than Chicago and St. Clair county.

In regard to the second group charged with conspiracy because they own buildings or taverns where were card games, or dice, like allegations by separate paragraphs are made in great detail.

The facts thus alleged are recitations as to separate defendants concerning their business, and addresses. The various recitations of such facts show the wide separation of location, endeavor, necessary acquaint-

ance and conduct of one defendant with the other, even between those of such respective division of said two groups of defendants.

The complaint recites that the defendants are engaged in conspiracy to violate the laws of the State, not that they maintain a single nuisance at a single designated place, but a large number of public nuisances.

The prayer asks for an elaborate injunction. It is not a request for abatement of a large number of designated places, machinery, appliances, real estate constituting nuisances, and hundreds of places scattered over Illinois. The complaint asks injunction against all defendants from committing at any time or place, at any time in the future, any crime or offense as listed in detail, or from owning or leasing any property at any time in the future to persons who may use same in the commission of their future crimes.

The entire theory of the complaint and purport of relief is that a court of equity, in one fell stroke, may enjoin some 1400 named and innumerable unnamed and unknown persons from committing crimes or misdemeanors.

It seems to us that this is an attempted revolutionary revision of the principles of our government and amounts to an astounding assertion of a principle of equity jurisprudence.

One of the first principles of civil rights recognized for hundreds of years is, that no man shall be deprived of his right of trial by jury. When equity deprives that right, it is with intense reluctance and based on the necessity of a given case where law may not give an adequate remedy.

We have not been cited any case and can find none of any court of this State, which in fact or principles goes to the extremity pursued by the complaint, and confirmed by the decree for injunction entered, in this case.

We have examined every Illinois case cited in the briefs and we believe that the authorities cited announce principles contrary to the contention of the State of Illinois, in the case at bar.

Under the authorities, one principle requisite for injunctive relief of this kind, where criminal acts are involved, is that equity does not have jurisdiction to enforce criminal law. To state a cause of action, the complaint must state facts, among other things, to show that adequate relief cannot be obtained at law in the criminal courts. It is noted in the cases cited and referred to that where injunctive relief has been granted, that the criminal charges are incidental only and that the complaint has alleged facts and not conclusions alone, showing why relief cannot be obtained at law. For this reason we think that the complaint herein is fatally defective in that particular.

Further examining the complaint, it is found that the pleader has alleged conclusions stating that adequate relief at law could not have been obtained. The allegations are that the State of Illinois is without a remedy at law. Why, it fails to allege. The complaint alleges in another place that the violations in the future will cost city, county and State large sums of money for prosecution and punishment of the persons committing the offenses and will not prevent the committing of future crimes by them; that any attempt to prosecute such violators would involve a multiplicity of suits. It is to be noted that this complaint does not state that law enforcement officers of this State and its numerous subdivisions have tried to enforce the law against any of these defendants, or have refused to prescribe offenses against the various statutes claimed to have been violated.

The Attorney General is at the head of the law enforcement body of the State. All State's Attorneys are at his command and direction. There is no alle-

gation that he or they have ever tried to enforce the laws ,complained of against the defendants.

It is not enough to say that there is no adequate remedy at law when the court can see at a glance that there is a sufficient and plenary remedy. The legislature has, under the constitution, gone far in providing adequate, minute, and efficient machinery to punish every offense charged in this complaint. A hundred years of government in Illinois has demonstrated the complete sufficiency and efficiency of this machinery. So far as this complaint alleges the adequacy of this machinery has not been tested. The facts alleged in this complaint are far,—very far from the facts alleged in *Stead v. Fortner, supra.* The law does not tolerate absurdities.

We are loath to believe that should he try, he and the various law enforcement officers of the State could not cause all of these nuisances to be abated and punishment meted out appropriately to any defendant.

The fact that it costs money or effort or time to enforce the criminal laws is not ground to support a claiming that adequate relief cannot be granted at law. The courts are always open over the entire State. Grand juries may be convened at any time. Informations may be issued any day.

It is unbelievable that the courts and enforcement officers and agencies in the 102 counties and in the numerous cities and villages of Illinois have not been able to enforce the criminal laws of this State; have refused to enforce same or have conspired to prevent enforcement of such laws.

Cases have been cited where the laws could not and were not enforced, but the complaints in most cases, or the facts proven where the facts for consideration were not only attained by view of the complaint, show, we believe, in every instance, positive statements, conclusively showing that the law could not be enforced. In *Stead v. Fortner, supra,* it is alleged that in the

town of Shelbyville defendant operated a saloon in dry territory which was a nuisance; that the city authorities took no measure to prevent sales; that informations had been filed charging a common nuisance, but that the county judge refused to issue warrants on the information; that lists of witnesses were presented to grand juries, but that each grand jury refused to hear witnesses or consider evidence or return indictments.

Such case is entirely dissimilar from the instant case.

In *People v. Clark,* 268 Ill. 156, the operator of a bawdy house had been continuously arrested and fined but had continued operating the nuisance. In *Cella v. People ex rel. Hamlin,* 112 Ill. App. 376, 388, an injunction was entered against the Madison Turf Exchange. The bill alleged that the proprietors remained out of the jurisdiction of process of the courts; that steps were then taken to arrest and prosecute their agents managing the business, but they escaped out of the State and that all attempts to suppress and abate the nuisance had proven inefficient.

The possibility that many person will violate the law and many suits will be required to enforce it does not warrant relief by injunction. *People ex rel. Shepardson v. Universal Chiropractors' Ass'n,* 302 Ill. 228, 231.

While a court of equity may abate a nuisance, such as a place where liquor is being sold illegally, it will not restrain by injunction the commission of illegal or immoral acts and equity will not enjoin one engaged in the sale of liquor, from making sales which are punishable by criminal act. *Stead v. Fortner, supra.*

Where the enforcement of criminal law is merely incidental to general relief sought in equity, it is well settled that a court of equity may grant relief by injunction. Where a political question merely incidental to invasion of a property right, equity would be justi-

fied in intervening. But the converse is not true. If the property right was merely incidental and the political question predominated, the court of equity would have no power to grant an injunction. *People v. McWeeney,* 259 Ill. 161, 174.

So if abatement of a nuisance were merely incidental and the basic theory of a complaint is the prevention of the commission of crimes, equity has no power to grant injunction against commission of crimes in the future.

The reading of the complaint in this case clearly shows that it was an attempt in one suit in one county of this State to herd together innumerable people charged with crime and maintaining innumerable nuisances throughout the various counties of the State and to enjoin them from committing crimes in the future. Abatement of the nuisance, had it been asked, is, therefore, shown to be merely incidental to the crimes involved. If so, all language in authorities cited by the State are not in point, since they refer to cases where the crime was merely an incident.

The decree followed the complaint and granted all relief prayed. The decree is improper on either of two theories. First, that the court should not have entered an order directing the injunction to issue and, second, that the injunction issued was broader than the averments of the bill justified. *Franklin Union No. 4 v. People,* 220 Ill. 355, 357. The above is true although the court may have jurisdiction of the class of cases or subject matter and of the person. The decree was broader than the allegations of the complaint. That is, than the properly alleged allegations of the complaint would justify.

It is well settled that equity has no jurisdiction in matters merely criminal or immoral, which do not affect property. It is not part of the mission of equity to administer the criminal law, enforce religion or morality or politics, except where incidental to the enforcement of property rights.

It would be a sad day for Illinois and our American way of life when a court having the power to influence public policy should hold that the opinion of one judge, however eminent, acting under the extraordinary remedy of injunction, should be substituted for the criminal code of Illinois.

The sole and entire theory of the complaint is to solve the crime question, by enjoining its commission.

Equity has no criminal jurisdiction. *People v. Prouty*, 262 Ill. 218, 221; *Koch v. McClugage,* 276 Ill. App. 512, 520; *People v. Kuca,* 245 Ill. App. 202, 207, 208.

Equity will look to the substance and not the mere form to determine whether injury to the property is the foundation on which equity may rest. *People v. McWeeney*, 259 Ill. 161, 173.

From the above we cannot escape the conclusion that the complaint on its face shows that its sole purpose is to assume a criminal jurisdiction; that the criminal phase is not incidental but is the major and sole phase; that abatement of nuisances, buildings and locations are not prayed for, although stated to exist in the bill; that the recited cases all turn on the basis of some property rights of a single individual or people in general as nuisances, as ground for abatement upon which basis criminal acts have been enjoined.

Civil Practice Act has not abolished underlying principles of equity practice. It specifically recognizes marked divisions between equity and law. Our practice act requires statements of fact and not conclusions.

This complaint makes two and perhaps three distinct and disconnected classes of persons defendants.

As stated above the complaint says that "in addition to the illegal conspiracy and operation of bookmaking establishments in St. Clair county, there exists an unlawful combination of" houses where dice and cards are played. That is an allegation of a second

conspiracy. There are no facts alleged showing that this second conspiracy was a part of any other conspiracy. Then follow allegations concerning another group of defendants, some of which are included in the first group in St. Clair county. But there is no allegation even that they conspired. Therefore, the complaint has three matters distinct and of independent nature. This renders the complaint multifarious. *North American Ins. Co. v. Yates,* 214 Ill. 272, 284. It contains all the faults of multifariousness. Several causes of action regarding the three distinct groups did not grow out of the same transactions. The transactions were multitudinous. All defendants are not interested in the same rights. Some are, and that would regroup the groups into innumerable other groups to comply with the requirement that all defendants must be interested in the same rights. As to these three groups, the acts by them shown are separate individual violations of statutory laws and their acts do not relate to a general scheme of conspiracy. It is not enough to say that they all intended to violate the laws of Illinois and, therefore, they were conspirators. If that were true, that could be said of every person who violates any law and he and every other violator could be included in one complaint as conspirators. So, under the authorities and as laid down in *North American Ins. Co. v. Yates, supra,* this complaint is multifarious without any situation of discretion by the court.

In a criminal case certain allegations may render an indictment sufficient by using the words of the statute. Furthermore, a bill of particulars may be required. We do not believe that decisions concerning the necessary allegations of a conspiracy under the criminal law are proper guides in considering a civil complaint. In a civil complaint facts must be alleged which will show positively, that the defendants conspired, had a common understanding—generally

schemed together. This complaint alleges conclusions only in regard to conspiracy. The complaint alleges that a conspiracy exists, but does not even allege who was conspiring. As said above, it does not charge unlawful combination of conspiracy to defeat the laws of a third group of St. Clair county defendants. It simply alleges they violated the laws. There are no allegations that the various defendants engaged in, agreed to, assisted the printing of cards and printing material, conversations and use of telephones, and so on.

It follows that in our judgment the complaint is obnoxious to the motions leveled against it, which have the force of a special demurrer. The complaint does not charge conspiracy in manner and form to justify the conclusion of conspiracy. The complaint is multifarious. The attempted service of defendants under the circumstances of this complaint is a distortion of our practice act. The law furnishes a complete and adequate remedy for the prosecution of each and every one of the offenses charged in this complaint.

Lastly, by whatever name it may be called, this proceeding is an attempt to enforce the criminal laws of Illinois through a court of equity by the extraordinary power of injunction. "The hand is the hand of Esau, although the voice is the voice of Jacob."

Any one of the foregoing propositions found adverse to plaintiff would warrant a reversal of this case. This proceeding is subject to all of them.

The decree of the circuit court of St. Clair county is reversed and this case is remanded with instructions to that court to allow the motions of defendants appellants to dismiss the complaint and to dissolve the injunction.

*Reversed and remanded with directions.*