WILLIAM H. STEAD, Attorney General, *et al.* Appellees, *vs.*
M. C. FORTNER *et al.* Appellants.

*Opinion filed October 26, 1912.*

1. LOCAL OPTION—*purpose of Local Option act.* The purpose
of the Local Option law is to give the voters of each political sub-
division, whether large or small and whether a town, precinct, city
or village, an opportunity to make such political subdivision anti-
saloon territory, and if the vote results in favor of making the
political subdivision anti-saloon territory it becomes such territory
throughout its entire extent.

2. SAME—*Local Option act confers no affirmative authority to
issue licenses.* The Local Option law confers no affirmative au-
thority to issue licenses for the sale of intoxicating liquor and
does not purport to authorize such sales, and no vote that can be
taken thereunder will, of itself, authorize the traffic or the issu-
ance of licenses, but municipal legislation authorizing the licenses,
fixing the fees and regulating the traffic is necessary.

3. SAME—*effect where town containing a city votes to become
anti-saloon territory.* Where a town containing a city votes to
become anti-saloon territory, the voters of the city may neverthe-
less vote upon the proposition to also become anti-saloon territory;
but even though the vote in the city is against the proposition,
there still remains the prohibition created by the result of the
township election.

4. SAME—*effect where a township votes to cease being anti-
saloon territory.* Where a township, and a city within the town-
ship, have each voted to become anti-saloon territory but the town-
ship subsequently votes against the proposition to continue to be
anti-saloon territory, the township vote does not make the city
saloon territory nor authorize the issuance of licenses or the sale
of intoxicating liquor in such city.

5. SAME—*the vote to cease being anti-saloon territory revives
ordinances formerly in force.* Where a city, incorporated town or
village becomes anti-saloon territory and afterwards the legal vot-
ers decide that it shall not continue to be anti-saloon territory, all
ordinances either restricting, regulating or prohibiting the sale of
intoxicating liquor, as well as for issuing saloon licenses, again
become operative.

6. SAME—*a vote to cease to be anti-saloon territory does not
repeal prohibitive ordinances.* If there are ordinances in force
prohibiting the issuance of dram-shop licenses at the time a city

becomes anti-saloon territory, a vote to cease to be anti-saloon territory does not repeal such ordinances but merely authorizes their repeal and passage of an ordinance authorizing licenses to issue.

7. SAME—*General Assembly had power to pass Local Option law*. It was within the discretion of the General Assembly, in the exercise of the police power for the protection of the health, morals and safety of the people, to enact the Local Option law, and the only function of the courts is to apply the law as made.

8. NUISANCES—*places where liquor is sold in violation of the Local Option act are nuisances*. Under section 38 of the Local Option act all places where intoxicating liquor is sold in violation of any provision of the act are declared to be common nuisances and may be abated as such, and the legislature having declared such places to be nuisances, its determination is final.

9. SAME—*the jurisdiction of equity to enjoin nuisances is of ancient origin*. The jurisdiction of a court of equity to enjoin nuisances is of ancient origin, and no statute is necessary to confer such jurisdiction but it would require a statute to destroy it.

10. SAME—*equity has jurisdiction to enjoin a public nuisance though offender is amenable to criminal law*. A court of equity has jurisdiction to abate a public nuisance even though the offenders are amenable to the criminal law and though no property rights are involved in the litigation, as the public health, safety and morals are on a plane above mere pecuniary damages, although not susceptible of measurement in money.

11. SAME—*criminal prosecution is not a complete and adequate remedy*. A criminal prosecution which can only dispose of an existing nuisance and cannot prevent a renewal of the nuisance, for which a new prosecution must be brought, is not regarded as a complete and adequate remedy for wrong inflicted upon the public.

12. SAME—*what question is to be considered on information to abate public nuisance*. A court of equity has jurisdiction to abate a public nuisance upon an information filed by the Attorney General or other public officer charged with the duty of seeing that the laws are enforced and the public protected, and the question to be considered in each case is whether the facts stated are such as call for the exercise of the jurisdiction.

13. SAME—*when equity may properly decline to exercise jurisdiction to abate nuisance*. Although no set of rules can be formulated which will control every case, it may be said, generally, that a court of equity may properly decline to exercise its jurisdiction to abate a public nuisance where the public officials are discharging their duties in enforcing the laws and ordinary methods are

effective · in compelling obedience to statutes forbidding the creation and maintenance of nuisances.

14. SAME—*when equity properly exercises jurisdiction to abate public nuisance.* A court of equity properly takes jurisdiction to abate a public nuisance consisting of a place where intoxicating liquor is sold in violation of the Local Option law, where the use of such place for the illegal sales of liquor has continued for a long time openly and notoriously and with the express consent of the city authorities, and where the county judge has refused to issue warrants for the offenders and grand juries refused to hear witnesses, thus preventing the abatement of the nuisance by ordinary means.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Shelby county; the Hon. J. C. McBRIDE, Judge, presiding.

W. C. & W. L. KELLEY, and CHAFEE & CHEW, for appellants.

W. H. STEAD, Attorney General, F. E. LATCH, State's Attorney, and W. EDGAR SAMPSON, (EMERY ANDREWS, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The town of Shelbyville is a township of the county of Shelby, which is under township organization, and the city of Shelbyville is incorporated under the general laws of the State, situated within the township and covering only a part of its territory. On April 7, 1908, the proposition, "Shall the town of Shelbyville become anti-saloon territory?" was submitted to the legal voters of the township under the act to provide for the creation and abolition of anti-saloon territory, in force July 1, 1907, (Laws of 1907, p. 297,) and the proposition was carried by an affirmative vote. On April 21, 1908, the proposition, "Shall the city of Shelbyville become anti-saloon territory?" was submit-

ted to the legal voters of the city, and a majority having voted in favor of the proposition the city became anti-saloon territory. On April 7, 1910, the proposition, "Shall the town of Shelbyville continue to be anti-saloon territory?" was submitted and the majority voted against the proposition, so that the township ceased to be anti-saloon territory. No proposition on the question has been submitted to the legal voters of the city or voted upon by them since the election when the city was made anti-saloon territory. On May 9, 1910, the city council of the city passed an ordinance granting liquor licenses within the city. The ordinance was vetoed by the mayor but was passed over the veto, and licenses were issued to the appellant M. C. Fortner, and others. On May 1, 1911, licenses were again issued, and one of them was to Fortner, purporting to authorize him to sell intoxicating liquors at retail for one year. Since May 9, 1910, Fortner has openly, continuously and willfully sold intoxicating liquor at retail in premises owned by the appellant Ross Ward, in pursuance of the ordinance and licenses. The city authorities have not taken any measures to prevent such sales, and on July 8, 1910, informations were filed in the county court charging Fortner and others with selling intoxicating liquors in violation of law and maintaining common nuisances, but the county judge refused to issue warrants on the informations. At the November term, 1910, and the March term, 1911, of the circuit court of Shelby county, lists of witnesses who would testify to sales of intoxicating liquors by Fortner and others were presented to the grand juries with requests that the witnesses be called and if the evidence was sufficient indictments should be returned against persons violating the law, but each grand jury refused to hear the witnesses or consider the evidence or return any indictment. After these fruitless endeavors to have the question tried and the alleged violators of the law punished by criminal process, the Attorney General and State's at-

torney of Shelby county filed the bill in equity in this case stating the above facts, alleging that the sales of intoxicating liquors were illegal and in open and flagrant violation of the law and with the connivance and consent of the city and county authorities, and praying the court to declare the premises owned by Ward, where the business was carried on by Fortner, a common nuisance, and that such nuisance be abated by the order and injunction of the court restraining the appellants from using the premises for the illegal sale of intoxicating liquors. The appellants demurred to the bill, and the demurrer being overruled they elected to stand by it, whereupon the court heard the cause and entered a decree finding the facts in accordance with the allegations of the bill and adjudging the premises in question to be a common nuisance, ordering the appellants to abate the same, and perpetually enjoining them from permitting the building to be used as a place where intoxicating liquors could be sold, bartered or given away. On appeal to the Appellate Court for the Third District that court ordered the decree modified, so that the injunction, instead of being perpetual, should continue until the voters of the city of Shelbyville should, if ever, vote that the territory should not remain anti-saloon territory, and in all other respects the decree was affirmed. A certificate of importance was granted and an appeal taken to this court.

The purpose of the act under which the elections were held is to give to the voters of each political subdivision, whether large or small, and whether a town, precinct, city or village, an opportunity to make such political subdivision anti-saloon territory. The unit of control on that question is the political subdivision, and if the vote results in favor of making the political subdivision anti-saloon territory it becomes such territory throughout its entire extent. The act confers no affirmative authority to issue licenses for the sale of intoxicating liquors and does not purport to authorize such sales. No vote that can be taken under the

act will, of itself, authorize the traffic or the issuance of licenses, but municipal legislation is necessary for fixing the license fee, providing for licenses and regulating the traffic. The township, therefore, could not by any vote authorize the issuance of licenses in the city of Shelbyville. If a city, incorporated town or village becomes anti-saloon territory and afterward the legal voters decide that it shall not continue to be such anti-saloon territory, all ordinances either restricting, regulating or prohibiting the sale of intoxicating liquor, as well as for the issuing of dram-shop licenses, again become operative. If there were ordinances in force prohibiting the traffic when the political subdivision became anti-saloon territory, they are revived by a vote that the subdivision shall cease to be anti-saloon territory, and the only effect of such a vote would be that the municipal authorities could repeal the prohibitive ordinance and pass an ordinance authorizing licenses. By the township election in 1908 the whole township, including the territory within the limits of the city of Shelbyville, became anti-saloon territory, but the city was a political subdivision having a right, under the express terms of the statute, to decide whether it should become anti-saloon territory, and the voters had a legal right to vote on that question on April 21, 1908, regardless of the result of the township election. If the election in the city had resulted against the proposition there would still have been the prohibition created by the township election, but the fact that the township had become anti-saloon territory did not preclude the city from also voting to become anti-saloon territory, to remain such until both the township and city voted to abolish the restriction. The vote of the township in 1910 that the prohibition should not longer continue as to the township did not make the city of Shelbyville saloon territory but it remained anti-saloon territory, and will remain such until the legal voters of the city decide to the contrary and remove the restriction. To give the statute,

which was enacted solely for the purpose of creating anti-saloon territory, a construction that the legal voters of the township could make the city saloon territory against the will of the legal voters of the city would not be justified. A similar statute has been construed by the Supreme Court of Colorado in accordance with this view in an opinion which appears to us to be unanswerable. (*Schwartz* v. *People,* 104 Pac. Rep. 92.) It is true, as that court conceded, that the rule does not work both ways, but it was made plain that the court had nothing to do with that question and its only duty was to enforce the statute as made. It was in the discretion of the General Assembly, in the exercise of the police power, for the protection of the health, morals and safety of the people and the promotion of their general welfare, to enact the statute, and our only function is to apply the law as made.

Section 38 of the act in question provides that all places where intoxicating liquor is sold in violation of any provision of the act shall be taken and held and are declared to be common nuisances and may be abated as such, but it is contended by counsel for appellants that the provision cannot be enforced through a court of equity or the public be protected against the nuisance because a court of equity will not restrain the violation of public or penal statutes and will not administer the criminal laws of the State. A court exercising equitable jurisdiction will not restrain, by injunction, the commission of illegal or immoral acts and will not enjoin one engaged in the sale of liquor from making sales which are punishable by the criminal law. But that is not the object of this suit. The law has a double purpose,—to punish the person committing an illegal act and to prohibit the use of property for illegal purposes,— and these are separate and distinct. Punishment for the act is a fine or imprisonment, or both, but it is not the sale or keeping for sale of liquor that constitutes the nuisance, but it is the keeping of a place which the General

Assembly has determined to be dangerous to the health, morals, safety and welfare of the public. The jurisdiction of courts of equity to enjoin nuisances is ancient and extends at least back to the reign of Queen Elizabeth, and in cases of public nuisances an indictment not only lies to abate them and punish the offenders, but an information also lies in equity to redress the grievance by way of injunction, on the ground that courts of equity have ability to give a more complete and perfect remedy, operating through future time, than is attainable by law. (Story's Eq. Jur.—13th ed.—secs. 921-924; Andrews on American Law, sec. 847.) It was very early recognized by this court that a court of equity may grant preventive relief where a threatened act would be a public nuisance, (*People* v. *City of St. Louis,* 5 Gilm. 351,) and that has always been the law in this State. It is a well recognized branch of equity jurisprudence to restrain, by injunction, public nuisances. (*Barrett* v. *Mt. Greenwood Cemetery Ass'n,* 159 Ill. 385.) The same rule is stated in 5 Pomeroy's Eq. Jur. sec. 479, Joyce on the Law of Nuisances, sec. 81, 21 Am. & Eng. Ency. of Law, (2d ed.) 705, and 29 Cyc. 1218. It is one of the most useful functions of a court of equity that it may give complete and adequate relief against acts which will constitute nuisances, and laws such as the one in question do not deny the equal protection of the laws. *Crowley* v. *Christenson,* 137 U. S. 86.

The act provides a method of abatement on the conviction of the keeper of the place where liquors are sold in violation of law, and it is contended that a court of equity will not intervene because of this provision. Section 221 of division 1 of the Criminal Code enumerates nine different classes of acts which are declared to be public nuisances, and the next section provides for the abatement of the nuisance by the sheriff or other proper officer upon conviction of the one who causes, creates or continues the nuisance; but that provision for the abatement of the nuisance has

never been regarded as a reason why a court of equity should not abate it and prevent its continuance by injunction. By this act all places where intoxicating liquors are sold in violation of its provisions are placed in precisely the same category as any other common and public nuisance, and there is no reason why the same rule should not apply to remedies. The law extends no special favor to one nuisance not allowed to all. As to nuisances generally, not only is the existence of the method provided by the statute for their abatement not an obstacle to relief in a court of equity, but this court, in *Minke* v. *Hopeman,* 87 Ill. 450, held that the trial and acquittal of one indicted for a nuisance did not deprive a court of equity of its equitable jurisdiction, and it was said that the fact that the statute gave a remedy by indictment did not deprive the court of jurisdiction to enjoin the nuisance. It was considered that a want of jurisdiction to enjoin a nuisance which might breed a pestilence or be dangerous to the welfare of the public would be a reproach to the law, and it was said that on the trial of the indictment the defendant would be entitled to the benefit of a reasonable doubt, and although the evidence might clearly preponderate against him yet the jury might acquit him. Whatever the degree of proof that would be required in a court of equity, that court would determine and apply the law, while in a criminal prosecution the jury would be judges of the law as well as of the facts, and a court, upon any degree of proof, might be powerless to enforce the law. This has been repeatedly demonstrated with respect to prosecutions relating to subjects on which there is a division of opinion among people who may serve as jurors. The Supreme Court of the United States held in the *Debs case* that the United States could maintain a suit in the Federal court to enjoin a public nuisance, notwithstanding the fact that the acts, in themselves, consisted of violations of the criminal law. (*In re Debs,* 158 U. S. 564.) In *Walker* v. *McNelly,* 121 Ga.

114, it was held that the solicitor general of the circuit court might maintain a suit for an injunction to abate the nuisance of selling intoxicating liquors illegally although the persons engaged in the sale could be punished.

Counsel for appellants also say that injury to property is the foundation upon which equity jurisdiction rests, and that the court had no jurisdiction in this case because it does not affect rights of property or the maintenance of property rights. Necessarily that rule applies only when the complainant is an individual having a property right, and no question as to damage to property is involved in proceedings by the public to abate a public nuisance. The question simply is whether there has been an invasion of public rights, irrespective of questions of pecuniary damage. (*Smith* v. *McDowell,* 148 Ill. 51.)  A court of equity has jurisdiction to abate a public nuisance although offenders are not only amenable to criminal laws but also where no property rights are involved in the litigation. (*State of Missouri* v. *Canty,* 207 Mo. 439; 13 Ann. Cas. 787.) In *Commonwealth* v. *McGovern,* 116 Ky. 237, the right of the chancellor to enjoin the manager of a theater from permitting a prize fight was sustained, and it was said that the right was not dependent upon the fact that property was involved, but was justified on the higher ground that the public safety and morals were concerned, and that the public good was of the first consideration.  In *State* v. *Crawford,* 28 Kan. 726, while the court held that an injunction should not be granted in that case because an adequate remedy was provided by statute, it was held that the court would enjoin the public nuisance unless some remedy was given for its complete suppression and extirpation.

As we have noted above, this court has never regarded a criminal prosecution, which can only dispose of an existing nuisance and cannot prevent a renewal of the nuisance, for which a new prosecution must be brought, as a com-

plete and adequate remedy for a wrong inflicted upon the public. The public authorities have a right to institute the suit where the general public welfare demands it and damages to the public are not susceptible of computation. The maintenance of the public health, morals, safety and welfare is on a plane above mere pecuniary damage although not susceptible of measurement in money, and to say that a court of equity may not enjoin a public nuisance because property rights are not involved, would be to say that the State is unable to enforce the law or protect its citizens from public wrongs. To the same effect are the decisions in *Commonwealth* v. *Respass,* (Ky.) 21 L. R. A. (N. S.) 836; *Attorney General* v. *Cockermouth Local Board,* L. R. 18 Eq. 172; *Attorney General* v. *Shrewsbury Co.* 21 Ch. Div. 752; *McMillan* v. *Kuhnle,* 73 Atl. Rep. (N. J.) 1054; *Columbia Athletic Club* v. *State,* 143 Ind. 98, and numerous other cases. An individual may enjoin a nuisance, although public in character, if he has suffered a particular injury, and in *Hoyt* v. *McLaughlin,* 250 Ill. 442, we reversed the decree dismissing a bill praying for an injunction against operating, conducting and maintaining a dram-shop under a license illegally issued, where the complainant alleged that he suffered an injury different from the public generally, from the illegal act. But the Attorney General is not required to allege any injury to property.

The General Assembly has the power to declare places where acts forbidden by law are committed, to be nuisances, and the legislative determination of that question is final. (*Goddard* v. *Town of Jacksonville,* 15 Ill. 588; *Block* v. *Town of Jacksonville,* 36 id. 301; *Laugel* v. *City of Bushnell,* 197 id. 20.) The General Assembly may declare a place where liquor is sold in violation of law a common nuisance, to be abated as such, and at the same time to provide for the indictment and trial of the offender, and equity jurisdiction is not inconsistent with due process of law. (*Mugler* v. *Kansas,* 123 U. S. 623.) There are

a number of States where jurisdiction is expressly con-
ferred upon courts of equity, but a statute is not necessary
to enable such courts to exercise a jurisdiction of ancient
origin and which has always existed without any statute.
(*Britton* v. *Guy,* 97 N. W. Rep. 1045; *State* v. *Chapman,*
1 S. Dak. 114; *Kirkland* v. *Terry,* 45 Wash. 663.)    If
there is a statute of that kind it is no more than a legisla-
tive declaration of an existing jurisdiction.    It would re-
quire a statute to destroy such a jurisdiction.

A court of equity has jurisdiction to abate a public
nuisance upon an information filed by the Attorney General
or other public officer charged with the duty of seeing that
the laws are enforced and the public protected, and the
question to be considered by the court in a particular case
is whether the facts stated are such as call for the exercise
of the jurisdiction.    No set of rules for the determination
of that question has been promulgated, and necessarily none
could be framed which would cover every case and which
might not hamper the court in exercising its power for the
protection of the health, morals, safety and welfare of the
public.    In a general way it may be said that the court
might properly decline to exercise its equitable jurisdiction
where public officials are discharging their duties in the
enforcement of the laws and the ordinary methods are ef-
fective in compelling obedience to statutes forbidding the
creation and maintenance of nuisances, but if ordinary
methods are ineffective or officials disregard their duties
and refuse to perform them, the court ought to apply the
strong and efficient hand of equity and uproot the evil.
The remedy should be confined within legitimate bounds,
but if any case could be conceived of in which equity ought
to take jurisdiction it is this one, where the use of the place
for illegal sales of liquor has been continued for a long
time openly and notoriously and with the connivance and
express consent of the city authorities, and where a county
judge has refused to issue warrants and grand juries have

refused to hear witnesses, so that the laws of the State might be enforced and the nuisance abated by the ordinary means.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*