City of Sterling, Appellee, v. John E. Speroni and Gino Zinanni, Appellants.

Gen. No. 10,343.

Opinion filed March 14, 1949.
Released for publication March 29, 1949.

BESSE & BESSE, of Sterling, for appellants.

L. E. ELLISON, of Sterling, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.
On May 21, 1948, the City of Sterling filed in the city court of that city its verified complaint. The complaint alleged that defendant, John E. Speroni was the owner of and in possession of certain described premises and buildings thereon located in the city; that a certain room or rooms in said building are used by defendant, Gino Zinanni with the knowledge and permission of Speroni for the purpose of selling pools and making and taking bets or wagers on horse races which are run at various race tracks throughout the United States; that large numbers of persons congregate in said room or rooms with the permission of the defendants for the purpose of placing bets or wagers on said horse races; that these bets are placed by persons desiring to do so by selecting the horses on which they wish to bet and depositing a sum of money with one of the operators prior to the running of the race; that such person then receives a receipt for the money in the form of a ticket; that the result of the race is broadcast to the inmates of the room or rooms

by means of a loudspeaker; that the bets are then settled in said room or rooms and the person or persons who placed their bets on a winning horse are then and there paid by one of the operators, upon exhibiting said ticket; that persons who placed bets on horses which failed to win in said race receive nothing and the money theretofore bet by such persons is retained by the operators.

The complaint then charged that the use of said premises for the foregoing purposes is a public nuisance and in violation of the ordinances of the City of Sterling and the laws of this State; that as a result thereof large numbers of women and children have had their support curtailed; that this gambling house is located adjacent to a billiard and recreation parlor upon the same premises and is a natural allurement to young and immature persons congregating in said billiard and recreation parlor; that the gambling house contributes to idleness and many persons have suffered direct pecuniary loss through its existence and it is a menace to the moral welfare of the inhabitants of the city; that the operators of said gambling house have been repeatedly arrested and fined but said fines have not deterred them from maintaining said gambling house; that the maximum fine which the city may cause to be levied is $200 for a single ordinance violation; that further efforts to apprehend and punish the perpetrators of this nuisance by ordinary means will make a mockery of the law as the operators will pay their fines and continue to operate said gambling house; that these gambling practices continue daily and the remedy of the plaintiff, at law, is inadequate; that only persons who are acceptable to the defendants are admitted to said gambling rooms thereby rendering it difficult to obtain evidence of the activities being carried on therein which will sustain a conviction for violation of the ordinances of the city and the plaintiff will suffer irreparable harm from the con-

tinued maintenance of this nuisance unless the same is forthwith abated.

The complaint prays that the nuisance be abated by enjoining Speroni from doing, permitting, suffering or allowing the making, taking, placing, receiving or accepting of bets or wagers on horse races and the broadcasting of the result of any horse race for the purpose of enabling any person or persons to settle wagers or bets thereon to be done on said described premises or in any room or rooms therein and that said Speroni be perpetually enjoined from using or allowing said premises or buildings situated thereon to be used for any of the foregoing purposes and that Zinanni be perpetually enjoined from taking, receiving or accepting bets or wagers in horse races or settling bets or wagers on horse races on the premises or any building thereon. Upon notice and a hearing a temporary injunction was issued and thereafter the defendants filed their separate answers.

The defendant, Speroni, by his answer admitted the ownership of the premises described in the complaint, averred that they were improved by a mercantile and hotel building known as the Galt Hotel but denied that any portion thereof was used by him for the purpose of selling pools and making bets on horse races as alleged in the complaint. He denied the other allegations of the complaint and averred that inasmuch as the State of Illinois had legalized betting on horse races at certain locations it was no longer unlawful to bet on horse races and such law operated to repeal by implication any statute or ordinance imposing a fine or penalty on any person who permits or operates a place where betting on horse races is conducted. The answer of this defendant further averred that the alleged offenses, sought to be enjoined, if they are crimes, are not within the jurisdiction of a court of equity but amenable only in a court of law.

Gino Zinanni, the other defendant, by his answer, denied substantially all the allegations of the complaint except he admitted that he had been arrested and fined for taking bets on horse races on two separate occasions. The answer of this defendant likewise avers that the State of Illinois has legalized betting on horse races and concludes that betting on horse races and operating a place where such bets are placed are legal, but if not, equity has no jurisdiction to enjoin the commission of such offenses.

After the issues had been made up, a hearing was had before the chancellor resulting in a decree finding that Zinanni unlawfully operated, prior to the filing of the complaint herein and also subsequent thereto, a gambling house located in a room in the southeast corner of the basement of the Galt House and that Speroni knowingly permitted, during the same time, the operation thereof in said room, that Zinanni had been arrested and fined twice on charges of operating said gambling house prior to the time the complaint was filed and that said gambling house is a public nuisance and plaintiff has no adequate remedy at law for the abatement thereof. The decree made the temporary injunction permanent and the defendants appeal.

Allen Hill testified, on behalf of the plaintiff, that he was the commissioner of public health and safety and a member of the city council of the City of Sterling; that on March 27, 1948 and on April 10, 1948 and on July 24, 1948, he went to what is known as the bookie joint in the basement of the Galt House, the room number being either 315 or 317; that upon March 27 and on April 10, he placed bets on the horses with defendant Zinanni; that he gave him some money and received a small yellow ticket on which was written the horse's number. This ticket was identified, offered and admitted in evidence. This witness described the smoky room, the floor littered with paper and torn

tickets, the chairs occupied by some thirty people, the loudspeaker saying "they're off" "at the quarter" "at the half mile" and he went into detail describing how the bets were placed to win, place or show. The evidence discloses that on April 10, 1948, the place had been "raided" by the officials of the city and on May 6, 1948, Mr. Hill had a conversation with defendant, Speroni and as abstracted this is what occurred: "Mr. Speroni stated that the fine that had been paid for the raid on the tenth of April was the largest that Sterling had ever received. He (Speroni) requested that some arrangement be worked out whereby he would be able to run his racing establishment and pay a certain amount within reason. I told him that as far as I was concerned there could be no arrangement and if he operated his racing establishment again, we would be back. He said that would be all right if we would let him know when we were coming, I told him that no arrangements like that could be worked out. Mr. Speroni at one time during the conversation said that if an arrangement like that could be effected that he would go along with it as long as the tariff did not get too high. Mr. Speroni was asking in a general way whether it would be possible to operate a bookie establishment."

Another witness testified that he entered this basement room by means of a key given him by Zinanni, that he placed bets with one of the ladies at the ticket window on July 17, 1948 and was there again on July 24, 1948 and that he had been there "off and on" for six months and was there almost every Saturday afternoon. He further testified that sometimes he won and when he did, he turned in his winning ticket and received his money from the cashier's cage from Zinanni. Another witness testified that he had a key to the door given him by Speroni and was there upon one occasion between May 21, 1948 and July 24, 1948 and placed a bet; that there were thirty five people there,

reading racing forms, placing bets and Zinanni was there at the pay-off window. There were other witnesses who testified to the same effect.

The evidence is further that Zinanni plead guilty on April 19, 1947 to the charge of operating a gaming house at this location and again plead guilty on April 10, 1948 to the offense of operating a gambling house upon these premises. On each occasion he was fined $200 which he paid. The first case was brought by the city for the violation of its ordinances and the second charged a violation of our criminal code.

Counsel for appellants do not contend that the evidence does not show that appellants were engaged in operating an up to the minute bookie joint and gaming house where gambling on horse races is carried on but insist that equity will not interfere with matters which are simply criminal or immoral unless the operation of such a place interferes with property rights; that in order for equity to take jurisdiction and enjoin a nuisance the place against which an injunction is issued must in fact constitute a nuisance injurious to public and private rights and not merely a violation of criminal law. Counsel call our attention to *People v. Monroe,* 349 Ill. 270 and argue that since this case sustained the validity of the Horse Racing Act, the business of betting on horse races is placed in the same light as any other respectable business and is subject to the same regulation under the police power of the State and is not a nuisance *per se* but only becomes one when the circumstances under which it is carried on show it is a nuisance in fact.

There is no merit in any of these contentions. The only issue in the case of *People v. Monroe,* 349 Ill. 270 was the constitutionality of the Horse Racing Act [Ill. Rev. Stats. 1947, ch. 8, par. 37a *et seq.;* Jones Ill. Stats. Ann. 59.01 *et seq.*]. The pari-mutuel act specifically provides that betting on horse races is legalized only at certain locations and under certain

conditions. A gambling house maintained at a race track operating under the pari-mutuel system may no longer be considered a public nuisance and abated as such but the court in sustaining the validity of that Act and in answering the contention that the Act amended other statutes by reference to their titles only, stated that the Act did not purport to change the language of any prior Act but only to withdraw the use of pari-mutuel from the scope of general language used in such prior acts.

A pool room in its common or popular meaning is a place where people resort to wager on horse racing which is run away from the room or out of the State. Such a place is a common gambling house and as such is indictable as a common or public nuisance at common law. (27 C. J. S. Title, Disorderly Houses, sec. 4, p. 310.) The terms gaming house and gambling house are synonomous. A gaming house is a house kept for the purpose of permitting persons to resort to it and gamble therein and the keeping of a gaming house is indictable at common law as a common or public nuisance because it offers great temptation to idleness and tends to draw together disorderly persons to the encouragement of immorality and breaches of the peace. 27 C. J. S. 309. *Lane v. City of Springfield,* 120 Ill. App. 5. Book making and pool selling on horse racing are gaming under the laws of this State and under the evidence found in this record the portion of the premises described in the decree appealed from was kept and used for the purpose of book making and selling pools contingent upon the result of horse races and was a common gaming house within the meaning of the statutes of this State (*Swigart v. People,* 154 Ill. 284) and as such a nuisance *per se* (18 C. J. 1239-4), the common law being in force in Illinois until changed by statute (*Miller v. Pennington,* 218 Ill. 220; *Fuhrhop v. Austin,* 385 Ill. 149, 153).

*People v. Clark,* 268 Ill. 156, was a bill for injunction and from a decree permanently restraining the defendant from using or operating certain described premises in the City of Kankakee for the keeping or maintenance of a house of ill-fame the defendant appealed. In that case it was contended by the defendant, just as appellants contend here, that a court of equity has no jurisdiction to punish crime. The court said that was true if punishment of crime is the only object of the proceeding. "But," continued the court, "the rule is that where a nuisance affects the public welfare it may be abated in equity on the application of the proper officer. . . . The jurisdiction of courts of equity to enjoin nuisances is ancient and in case of public nuisances is coincident with the remedy by indictment. The remedy by injunction is based on the ground that courts of equity have ability to give a more complete remedy, operating through future time, than is obtainable by law, and it is a well recognized branch of equity jurisprudence to restrain public nuisances by injunction."

In *People v. Huls,* 355 Ill. 412, at page 416, it is said: "The jurisdiction of courts of equity to restrain the maintenance of public nuisances is of ancient origin and has been traced back as far as the reign of Queen Elizabeth. The jurisdiction is applicable not alone to public nuisances, strictly speaking, but also to purprestures upon public rights or property. (2 Story's Eq. Jur. (13th Ed.) Sec. 921.) The ground of the jurisdiction of courts of equity in cases of public nuisances is their ability to give a more complete and perfect remedy than is attainable at law in order to prevent irreparable mischief and also to suppress oppressive and vexatious litigation." And in *Stead v. Fortner,* 255 Ill. 468, at page 477, the court said that a court of equity has jurisdiction to abate a public nuisance although the offenders are not only amenable to criminal laws but also where no property rights are

involved in the litigation. The opinion continues: "This court has never regarded a criminal prosecution which can only dispose of an existing nuisance and cannot prevent a renewal of the nuisance, for which a new prosecution must be brought, as a complete and adequate remedy for a wrong inflicted upon the public. The public authorities have a right to institute the suit where the general public welfare demands it and damages to the public are not susceptable of computation. The maintenance of the public health, morals, safety and welfare is on a plane above mere pecuniary damage although not susceptable of measurement in money and to say that a court of equity may not enjoin a public nuisance because property rights are not involved, would be to say that the state is unable to enforce the law or protect its citizens from public wrongs."

From a consideration of all the evidence appearing in this record, including the several photographs taken when this "bookie joint," as the various witnesses characterized this portion of the Galt House, was raided by the city officials, the conclusion is inescapable that this was a modern, air-conditioned, well equipped, managed and operated gambling room. It had been in operation by appellants for more than a year. One of the defendants had been arrested and fined on two occasions. Substantial fines were imposed which were promptly paid and the illegal use of the premises continued. It was the desire of appellants to pay a reasonable sum to those in authority and be permitted to operate without molestation. Obedience to, or respect for, the law which characterizes their business as a nuisance was of no concern to appellants or either of them. It is a reasonable conclusion that they are both jointly interested in the enterprise. Neither testified upon the hearing. The premises were owned by Speroni and he knowingly permitted Zinanni to operate the bookie joint on his premises. Speroni was the moving spirit behind these

gambling operations. The only effective means of abating a nuisance of the character of the one shown by the evidence found in this record and to silence this bookie joint is by the strong and far reaching use of the equitable powers of the trial court.

The decree of the city court of the City of Sterling was in accordance with well-settled principles of equity and is supported by the evidence and should be and is affirmed.

*Decree affirmed.*