(No. 54090.—

THE CITY OF CHICAGO, Appellant, v. FESTIVAL THE-
ATRE CORPORATION *et al.*, Appellees.

*Opinion filed June 18, 1982.*

Stanley Garber and William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke, Richard F. Friedman and Jerome A. Siegan, Assistant Corporation Counsel, of counsel), for appellant.

Patrick A. Tuite, of Patrick A. Tuite, Ltd., of Chicago, for appellees.

JUSTICE WARD delivered the opinion of the court:

This appeal concerns the propriety of a permanent injunction issued by the circuit court of Cook County, by which the court restrained the Festival Theatre Corporation and the theater manager, Paul Liang, from presenting obscene live exhibitions. The appellate court held that issuance of the injunction violated the first amendment to the United States Constitution (U.S. Const., amend. I).

(88 Ill. App. 3d 216.) We granted the city of Chicago, which had sought the injunction, leave to appeal (73 Ill. 2d R. 315(a)).

The plaintiff, the city of Chicago, filed a complaint for injunctive relief on August 29, 1978. The complaint alleged that the defendants, Festival Theatre Corporation and Liang, on three occasions presented exhibitions that consisted of live sex acts in violation of the criminal obscenity statute (Ill. Rev. Stat. 1977, ch. 38, par. 11—20). The city alleged that the performances were harmful to its citizens, and that it had no adequate remedy at law. Also, the city alleged that the defendants were violating a municipal ordinance because they had not secured a public amusement license. The complaint petitioned for the issuance of an injunction against such performances at the theater.

The court conducted a hearing on September 25, 1978, at which several Chicago police officers testified to the following. On July 26, 1978, and August 14, 1978, plainclothes police officers paid fees of five dollars to enter the theater. On both occasions, there was a live stage show involving two women. In the July 26 show, the women danced and completely disrobed to music. On both occasions, though the shows differed in some respects, the women kissed and fondled each other, and engaged in deviate sexual acts during the performances. After the performances, the women were arrested for obscenity (Ill. Rev. Stat. 1977, ch. 38, par. 11—20(a)(4)) and public indecency (Ill. Rev. Stat. 1977, ch. 38, par. 11—9(a)(2)). The manager, Liang, was arrested for obscenity (Ill. Rev. Stat. 1977, ch. 38, par. 11—20(a)(2)) and for city ordinance violations.

On August 23, 1978, the stage show, which was witnessed by police officers, involved only one of the women and a man. The woman told the audience that she had to change her "act" because of previous arrests. Again she

danced and removed her clothes. She was soon joined on stage by the man, who removed his clothes, and they engaged in actual or simulated intercourse and deviate acts. Both were arrested for obscenity and public indecency.

Criminal proceedings were begun after the arrests, but at the time of the hearing no dispositions had been made of them. The record does not indicate the eventual dispositions.

The court found that the performances were a public nuisance. The injunction stated:

> "THE COURT DOTH FIND: That the live stage performance, as performed at the Festival Theater, 3912 N. Sheridan Road, Chicago, Illinois, is a public nuisance.
>
> THEREFORE, IT IS HEREBY ORDERED that defendants, Festival Theater Corporation and Paul N. Liang, their employees, agents and representatives, are hereby permanently enjoined and restrained, until further order of Court, from performing or permitting the performance of lewd acts of live persons, in violation of applicable City Ordinances and State Statutes, at 3912 N. Sheridan Road, Chicago, Illinois, for the entertainment, sexual arousal, or viewing by and of members of the public; including, but not limited to, the following of such acts:
>
> 1. Actual or simulated stimulation, fondling and/or massage of the genitals of one person by another person or by any part of the body of another person or by any part of the body of the first person himself or herself.
>
> 2. Actual or simulated stimulation, fondling and/or massage of the breasts and/or buttocks of one person by another person or by any part of the body of another person or by any part of the body of the first person himself or herself.
>
> 3. Conduct amounting to a lewd exhibition of the genitals.
>
> 4. Actual or simulated acts of sexual intercourse where the genitals and/or buttocks of one or more of the performers are exposed."

The appellate court considered that the city of Chicago had demonstrated that it had no adequate legal rem-

edy. Further, the court recognized that the concept of common law nuisance enabled a court to exercise its equity powers to abate a use of premises harmful to public morals. The court held, however, that the concept of a common law public nuisance was so vague that use of it against obscenity "transgresses the constitutional boundaries *** which provide that conduct regulated as obscenity must be specifically defined." 88 Ill. App. 3d 216, 230.

Though it did not appear to have been an issue, the appellate court stated, too, that the proceeding could not have been brought as a statutory nuisance action under "An Act regarding places used for purposes of lewdness, assignation, or prostitution ***" (Ill. Rev. Stat. 1977, ch. 100½, par. 1 *et seq.*) (The Public Nuisance Act). Relying upon decisions that it said held that the Act was aimed against prostitution and not obscenity, the court concluded that the conduct here was not covered by the terms "lewdness, assignation, or prostitution." 88 Ill. App. 3d 216, 222.

First, as to whether the Public Nuisance Act could have been invoked under these circumstances, we do not express an opinion. The city points out it did not attempt to bring this action under the Act. The appellate court, however, did briefly discuss the question. It relied upon three decisions, *People v. Movies, Inc.* (1971), 49 Ill. 2d 85 (a *dictum*), *People ex rel. Difanis v. Futia* (1978), 56 Ill. App. 3d 920, and *People v. Goldman* (1972), 7 Ill. App. 3d 253, which stated that the Act was aimed at prostitution, not at obscenity. The court said that because the legislature did not amend the statute following those decisions, that construction of the Act presumptively reflected the legislature's intent. Therefore, the Act was unavailable here. 88 Ill. App. 3d 216, 222.

While we need not and do not decide the question, because of the appellate court's stated conclusion it is appropriate to point out that the unavailability of the Act

here is not as clear cut an issue as the appellate court's opinion indicates. In none of the decisions cited was the activity to be enjoined *live* sex acts. *Movies* concerned motion pictures; *Futia* involved a "peep show" and nude photo studio; and *Goldman* concerned an adult bookshop.

Courts have held that statutes providing for the abatement of places where "lewdness, assignation or prostitution" are conducted are not applicable to the exhibition of obscene films or books. (*E.g., People ex rel. Busch v. Projection Room Theatre* (1976), 17 Cal. 3d 42, 60-61, 550 P.2d 600, 611-12, 130 Cal. Rptr. 328, 339-40, *cert. denied* (1976), 429 U.S. 922, 50 L. Ed. 2d 289, 97 S. Ct. 320; *State ex rel. Murphy v. Morley* (1957), 63 N.M. 267, 317 P.2d 317.) Some of those holdings, however, have been based at least partially on the ground that the statutory language was directed against conduct rather than portrayal. (See *State ex rel. Wayne County Prosecutor v. Diversified Theatrical Corp.* (1976), 396 Mich. 244, 246, 240 N.W.2d 460, 461 (statute "was intended to apply to houses of prostitution and not motion picture theaters where sexual acts are not committed but are portrayed on the screen"); *Commonwealth v. MacDonald* (1975), 464 Pa. 435, 460-61, 347 A.2d 290, 304, *cert. denied* (1976), 429 U.S. 816, 50 L. Ed. 2d 75, 97 S. Ct. 57 (statute concerns only buildings used for "illicit sexual *conduct*," not obscene films).) In California, where a statute with such language has been held inapplicable to films, courts have held that the statute could be used against a place offering live obscene performances (*People ex rel. Busch v. Projection Room Theatre* (1976), 17 Cal. 3d 42, 60-61, 550 P.2d 600, 611-12, 130 Cal. Rptr. 328, 339-40, *cert. denied* (1976), 429 U.S. 922, 50 L. Ed. 2d 289, 97 S. Ct. 320; *People ex rel. Hicks v. Sarong Gals* (1972), 27 Cal. App. 3d 46, 103 Cal. Rptr. 414) or a place showing obscene films where lewd sexual conduct by the audience is condoned and encouraged (*People v. Mitchell* (1976), 64 Cal. App. 3d 336, 134 Cal. Rptr. 358).

Thus, whether a distinction may be drawn, as the appellate court sought to do, between the abatement of obscenity and the abatement of a house of prostitution may be questioned where the obscenity consisted of live sex acts performed before a paying audience. This is true especially because this court has not restricted the meaning of "prostitution" under nuisance laws to the definition of "prostitution" in the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 11—14). *City of Chicago v. Cecola* (1979), 75 Ill. 2d 423 (obscene massage, though not prostitution under criminal law, is prostitution for purposes of nuisance laws).

We do hold, however, that obscene stage shows may be enjoined as common law public nuisances.

The Public Nuisance Act does not displace common law actions to abate public nuisances. (*City of Chicago v. Cecola* (1979), 75 Ill. 2d 423, 427.) Rather, equitable jurisdiction to abate public nuisances is said to be of "ancient origin," and it exists even where not conferred by statute, where the offender is amenable to the criminal law, and where no property rights are involved. (*Stead v. Fortner* (1912), 255 Ill. 468, 475-79; *Village of Bensenville v. Botu, Inc.* (1976), 39 Ill. App. 3d 634, 636.) Too, in a common law action, the extent of the concept of public nuisance is not limited to those activities the legislature has declared public nuisances. See *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 162 (statute designating items as public nuisances was declaratory of common law and did not restrict class of public nuisances to items enumerated); *City of Chicago v. Geraci* (1975), 30 Ill. App. 3d 699, 702 (legislature need not define public nuisances, as public nuisance is a separate civil action under common law unrelated to legislative enactments).

A theater presenting obscene performances fits within the common law concept of public nuisance. This court in *City of Chicago v. Shaynin* (1913), 258 Ill. 69, 72, stated:

"Public nuisances, strictly speaking, are such as result from the violation of public rights. Of this class are those intangible injuries that result from the immoral, indecent and unlawful acts of parties that become nuisances by reason of their deleterious influence upon the morals or well being of society. [Citation.] To this class belong those nuisances the existence of which only needs to be proved in any locality, whether near or far removed from cities, towns or human habitations. 'A public exhibition of any kind that tends to the corruption of morals, to a disturbance of the peace or of the general good order and welfare of society is a public nuisance. Under this head are included *** any and all exhibitions the natural tendency of which is to pander to vicious tastes and to draw together the vicious and disorderly members of society.' [1 H. Wood, The Law of Nuisances sec. 68 (3d ed. 1893)] [citations]."

In *Stevens v. Morenous* (1912), 169 Ill. App. 282, 283, the court reviewed a decree enjoining a stage show alleged to be "of a comic, frivolous and unsavory character ***." While the court concluded that it was error to have enjoined the show, which did not appear to be obscene or immoral, the court recognized that theaters do become common law nuisances "when they are used for the exhibition of immoral and vicious plays ***." (169 Ill. App. 282, 285.) See 1 H. Wood, Nuisances sec. 52 (3d ed. 1893) (theaters become nuisances of the worst kind when they are used for the exhibition "of low and vicious plays that pander to the base passions of men"); see also *General Corp. v. State ex. rel. Sweeton* (1975), 294 Ala. 657, 663, 320 So. 2d 668, 672-73, *cert. denied* (1976), 425 U.S. 904, 47 L. Ed. 2d 753, 96 S. Ct. 1494 (traditionally, continuing activity against public morals or decency has been considered a public nuisance).

Similarly, because brothels tend to attract lewd persons, disturb the peace and contribute to immorality, they have long been held to be public nuisances *per se* at common law. (*People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 161-62; 1 H. Wood, Nuisances sec. 29 (3d ed. 1893).) Due

to the similarity between the activities of a brothel and those of a live obscene performance, the court in *Commissioner v. Sidne Enterprises, Inc.* (1977), 90 Misc. 2d 386, 394 N.Y.S.2d 777, held that an establishment offering obscene live nude entertainment was a common law public nuisance.

The appellate court here held, as we have noted, that the concept of public nuisance included obscene stage shows. The defendant does not challenge that holding. The court considered nevertheless that such shows could not constitutionally be enjoined as common law nuisances. The court pointed out that theatrical performances involving nudity do enjoy first amendment protection. (See *Doran v. Salem Inn, Inc.* (1975), 422 U.S. 922, 45 L. Ed. 2d 648, 95 S. Ct. 2561; *Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 43 L. Ed. 2d 448, 95 S. Ct. 1239.) The court recognized that obscenity is not expression protected by the first amendment and, therefore, may be regulated. (88 Ill. App. 3d 216, 220, citing *Miller v. California* (1973), 413 U.S. 15, 18, 37 L. Ed. 2d 419, 427, 93 S. Ct. 2607, 2612.) Too, the court acknowledged that civil injunction procedures have been held to be permissible means for regulating obscenity. 88 Ill. App. 3d 216, 221, citing *Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 37 L. Ed. 2d 446, 93 S. Ct. 2628; *Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 1 L. Ed. 2d 1469, 77 S. Ct. 1325.

The constitutional infirmity in the injunctive procedure, the court concluded, lies in the vagueness of the concept of common law nuisance. State laws regulating obscenity must specifically define the proscribed activity. The Supreme Court in *Miller v. California* (1973), 413 U.S. 15, 23-25, 37 L. Ed. 2d 419, 430-31, 93 S. Ct. 2607, 2614-15, stated:

> "State statutes designed to regulate obscene materials must be carefully limited. [Citation.] As a result, we now confine the permissible scope of such regulation to works which de-

pict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value.

The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest [citation]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value. \*\*\* If a state law that regulates obscene material is thus limited, as written or construed, the First Amendment values applicable to the States through the Fourteenth Amendment are adequately protected by the ultimate power of appellate courts to conduct an independent review of constitutional claims when necessary."

The appellate court considered that the concept of public nuisance at common law was too vague to satisfy the requirements stated in *Miller*. 88 Ill. App. 3d 216, 230.

The concept of common law public nuisance does elude precise definition. One commentator has stated, "The tort of nuisance has been said to defy definition except to the limited extent that it may be negatively defined through being distinguished from other tort actions." (Reynolds, *Public Nuisance: A Crime in Tort Law*, 31 Okla. L. Rev. 318, 318 (1978), citing Winfield, *Nuisance as a Tort*, 4 Camb. L.J. 189 (1931).) Certainly the statement in *Stevens v. Morenous* that theaters presenting "immoral or vicious" plays are nuisances offers less than precise guidance as to what plays fit that category.

The vagueness difficulty, however, may be corrected by restricting the reach of the common law nuisance action to the definition of obscenity in our criminal obscenity statute (Ill. Rev. Stat. 1977, ch. 38, par. 11—20(b)). The Supreme

Court in *Miller,* in the portion we have quoted above, said that a State law regulating obscenity that is not framed according to the *Miller* definition of obscenity may still be constitutional if it is construed as being limited to the *Miller* guidelines. Courts have resolved problems of vagueness in public nuisance statutes by such a construction. (*E.g., People ex rel. Busch v. Projection Room Theatre* (1976), 17 Cal. 3d 42, 56, 500 P.2d 600, 608, 130 Cal. Rptr. 328, 336, *cert. denied* (1976), 429 U.S. 922, 50 L. Ed. 2d 289, 97 S. Ct. 320 (vagueness in public nuisance definition of "indecent, or offensive to the senses" cured by construction in accordance with *Miller* obscenity standard); *General Corp. v. State ex rel. Sweeton* (1975), 294 Ala. 657, 663-64, 320 So. 2d 668, 673-74, *cert. denied* (1976), 425 U.S. 904, 47 L. Ed. 2d 753, 96 S. Ct. 1494 (vagueness in statute that, as declaratory of the common law, made "places where lewdness" is conducted public nuisances was overcome by judicial construction in accordance with the constitutional test of obscenity).) Similarly, this court has upheld the constitutionality of our criminal obscenity statute by construing it to be limited to the *Miller* standard. (See *People v. Ridens* (1974), 59 Ill. 2d 362, *cert. denied* (1975), 421 U.S. 993, 44 L. Ed. 2d 483, 95 S. Ct. 2000; *People v. Gould* (1975), 60 Ill. 2d 159.) Accordingly, in determining whether a performance is a common law public nuisance because of offense to public morality, courts are to employ the definition of obscenity in our criminal obscenity statute (Ill. Rev. Stat. 1977, ch. 38, par. 11—20), as judicially construed, which has been recognized as satisfying constitutional requirements (*Ward v. Illinois* (1977), 431 U.S. 767, 52 L. Ed. 2d 738, 97 S. Ct. 2085). Here, the trial court's decision to issue the injunction was based on its finding that the performances were obscene.

The appellate court erroneously rejected the suggestion that it overcome the problem of vagueness in the concept of common law nuisance by limiting the scope of the action

to the definition of obscenity. It said that to do so would usurp the legislature's prerogative to establish policy. The General Assembly, however, has already clearly expressed itself in the area of obscenity. Its determination that obscenity is contrary to public policy and offensive and dangerous to society is reflected in the enactment of the statute making obscenity a crime. That statute in part provides:

"(a) Elements of the Offense.

A person commits obscenity when, with knowledge of the nature or content thereof, or recklessly failing to exercise reasonable inspection which would have disclosed the nature or content thereof, he:

\* \* \*

(2) Presents or directs an obscene play, dance or other performance or participates directly in that portion thereof which makes it obscene; or

(3) Publishes, exhibits or otherwise makes available anything obscene; or

(4) Performs an obscene act or otherwise presents an obscene exhibition of his body for gain; or

\* \* \*

(b) Obscene Defined.

A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, that is, a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. A thing is obscene even though the obscenity is latent, as in the case of undeveloped photographs.

\* \* \*

(d) Sentence.

Obscenity is a Class A misdemeanor. A second or subsequent offense is a Class 4 felony." Ill Rev. Stat. 1977, ch. 38, par. 11—20.

That conduct may be subject to the sanctions of the criminal law does not, of course, foreclose a common law nuisance abatement action against the conduct. The General Assembly has also provided in section 1—4 of the

Criminal Code of 1961:

> "This Code does not bar, suspend, or otherwise affect any right or liability to damages, penalty, forfeiture, or other remedy authorized by law to be recovered or enforced in a civil action, for any conduct which this Code makes punishable; and the civil injury is not merged in the offense." Ill. Rev. Stat. 1977, ch. 38, par. 1—4.

Moreover, by recognizing that an action may be brought to enjoin as public nuisances live obscene exhibitions, as were involved here, judges are not given liberty to impose their individual tastes or sensitivities upon the public. In determining whether the conduct should be enjoined as obscene, the court has to be guided by "contemporary community standards."

We cannot accept the appellate court's observation that the procedures of a civil nuisance action make it unsuitable in obscenity cases. (88 Ill. App. 3d 216, 231-32.) Specifically, the court noted the absence of a right to a jury trial and suggested that the civil standard of proof might not be appropriate. The Supreme Court has approved the use of adversary civil injunctive proceedings against obscenity. (*Paris Adult Theatre I v. Slaton* (1973), 413 U.S. 49, 55, 37 L. Ed. 2d 446, 455, 93 S. Ct. 2628, 2634.) It has not held that jury trials are necessary in civil obscenity proceedings. (See *Alexander v. Virginia* (1973), 413 U.S. 836, 37 L. Ed. 2d 993, 93 S. Ct. 2803; *Kingsley Books, Inc. v. Brown* (1957), 354 U.S. 436, 443-44, 1 L. Ed. 2d 1469, 1475-76, 77 S. Ct. 1325, 1328-30.) We recognize that a jury may be useful in determining whether a performance in a given case is obscene according to contemporary community standards. But we recognize too that in not every case could reasonable minds differ as to whether a performance was obscene. Too, under our civil procedure the court is authorized to call an advisory jury to assist it where the court deems it necessary. Ill. Rev. Stat. 1977, ch. 110, par. 63.

As to the propriety of the civil standard of proof, we would observe that the Supreme Court has recently held that proof beyond a reasonable doubt is not required in a civil public nuisance abatement action involving obscenity. *Cooper v. Mitchell Brothers' Santa Ana Theater* (1981), 454 U.S. 90, 70 L. Ed. 2d 262, 102 S. Ct. 172.

The appellate court held also that the injunction is a prohibited prior restraint on expression. (88 Ill. App. 3d 216, 232-35.) The court said that the circuit court's order listed prohibited activities, such as simulated intercourse. Therefore, the defendant is enjoined from presenting performances that involve the proscribed acts in any form or context. Because arguably one or more of the proscribed acts could be performed in a show that is not obscene, the appellate court concluded that this injunction covers even protected expression.

To support its view that this restraint is improper, the court cited *Vance v. Universal Amusement Co.* (1980), 445 U.S. 308, 63 L. Ed. 2d 413, 100 S. Ct. 1156. There, the Supreme Court held that an injunction under a Texas public nuisance abatement statute would operate as an improper prior restraint. Under the statute a court could enjoin the exhibition of films at theaters that habitually had been used for the showing of obscene movies. The court said:

> "As the District Court and the Court of Appeals construed Art. 4667(a), when coupled with the Texas Rules of Civil Procedure, it authorizes prior restraints of indefinite duration on the exhibition of motion pictures that have not been finally adjudicated to be obscene. Presumably, an exhibitor would be required to obey such an order pending review of its merits and would be subject to contempt proceedings even if the film is ultimately found to be nonobscene. Such prior restraints would be more onerous and more objectionable than the threat of criminal sanctions after a film has been exhibited, since nonobscenity would be a defense to any criminal prosecution." 445 U.S. 308, 316,

63 L. Ed. 2d 413, 420-21, 100 S. Ct. 1156, 1161.

We judge that the injunction here did not present a problem of prior restraint. While the injunction does list a variety of sexual acts, it does not proscribe the performance of those acts in all contexts and unconditionally. The order says that the defendants are "permanently enjoined and restrained *** from performing or permitting the performance of lewd acts of live persons, *in violation of applicable City Ordinances and State Statutes* *** for the entertainment, sexual arousal, or viewing by and of members of the public; including, but not limited to, the following of such acts: ***." (Emphasis added.) Considering the pleadings and issues presented in the circuit court, the applicable State statutes to which the court referred obviously are the obscenity provisions of the Criminal Code. The injunction does no more than order the defendants not to violate the criminal laws against obscenity at the theater. Unlike the order in *Vance*, the defendants here could not be held in contempt unless it were shown that they staged a performance that was obscene. In short, the order did not touch protected expression. Any effect it could have produced relating to the first amendment was no greater than that produced by the obscenity provisions of the Criminal Code.

The injunction here would operate as Mr. Justice White in his dissenting opinion in *Vance* visualized (mistakenly, the majority considered) the operation of the injunction issued under the Texas statute. He believed that any injunction issued under the statute would be considered to incorporate the terms of the *Miller* obscenity test. He stated:

"Hence an Art. 4667(a) injunction would not by its terms forbid the exhibition of any materials protected by the First Amendment and would impose no greater functional burden on First Amendment values than would an equivalent—and concededly valid—criminal statute. It simply declares to the exhibitor that the future showing of obscene motion pic-

tures will be punishable. It is true that an Art. 4667(a) injunction is issued by a court of law while a criminal statute is imposed by a legislature. Yet this distinction seems irrelevant for First Amendment purposes." 445 U.S. 308, 321-22, 63 L. Ed. 2d 413, 424, 100 S. Ct. 1156, 1164 (White, J., dissenting).

Justice White also saw no constitutional difficulties in the procedures for any contempt action based on an injunction. Because those procedures would include the requirement of notice to the defendant and a judicial hearing in which the burden is on the party seeking to suppress the films to show a violation of the injunction, which would include proof of the obscenity of the films exhibited, he said "such procedures would fully satisfy the requirements of our cases." 445 U.S. 308, 323, 63 L. Ed. 2d 413, 425, 100 S. Ct. 1156, 1165 (White, J., dissenting).

Although we have found no constitutional defect in the injunction, we do consider that it was improvidently granted. A nuisance action involves two inquiries: (1) whether the activity complained of is in fact a nuisance; and, if it is, (2) whether an injunction against the activity is an appropriate remedy. We have already seen that a common law nuisance action may be brought against a theater operator who is conducting live obscene performances. Still, an injunction should not, without more, be issued against the operators of such a theater, as seemingly was done here.

It is a principle of equity that an injunction will not issue except where there is no adequate remedy at law. (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 322; *People ex rel. Fitnam v. City of Galesburg* (1868), 48 Ill. 485, 488; *Town of Manteno v. Surprenant* (1918), 210 Ill. App. 438, 444-46 (though court may prevent or remove a public nuisance through its equity powers, it will not do so where there is an adequate remedy at law).) Here, the activity complained of was the presenting of live

obscene exhibitions, and those conducting such exhibitions are amenable to prosecution under the criminal obscenity laws. We deem that issuance of the injunction was error because it was not shown that criminal prosecution fails to afford an adequate remedy for the harm caused.

As we have previously noted, the fact that the activity complained of in a public nuisance action may give rise to a criminal prosecution does not foreclose the bringing of the action for equitable relief. The criminality of the conduct is a relevant factor, however, in determining whether an injunction should issue. (Reynolds, *Public Nuisance: A Crime in Tort Law*, 31 Okla. L. Rev. 318, 327 (1978); D. Dobbs, Remedies 115-18 (1973); *e.g.*, *People ex rel. Bennett v. Laman* (1938), 277 N.Y. 368, 374, 14 N.E.2d 439, 441; *Commissioner v. Sidne Enterprises* (1977), 90 Misc. 2d 386, 394 N.Y.S.2d 777.) The purpose of giving equity jurisdiction in public nuisance actions is to offer remedies more complete than those available at law. (*People ex rel. Kerner v. Huls* (1934), 355 Ill. 412, 416; *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156, 162.) To permit a public body to obtain an injunction in a public nuisance action where there is an equally effective criminal law against the conduct would give rise to strong policy objections, such as were advanced in *Commonwealth v. Stratton Finance Co.* (1941), 310 Mass. 469, 38 N.E.2d 640. There, the court, in decrying any general use of equity in aid of criminal statutes, stated:

"The objections to 'criminal equity' are that it deprives the defendant of his jury trial; that it substitutes for the definite penalties fixed by the Legislature whatever punishment for contempt a particular judge may see fit to exact; that it is often no more than an attempt to overcome by circumvention the supposed shortcomings of jurors; and that it may result, or induce the public to believe that it results, in the arbitrary exercise of power and in 'government by injunction.' These objections are substantial. They should cause a court to hesitate to extend the use of the injunction

into the criminal field without express legislative sanction." 310 Mass. 469, 474, 38 N.E.2d 640, 643.

For a legal remedy to be deemed adequate, "the remedy 'must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy.' " (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 549, quoting *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 1021.) This court has consistently recognized that the criminal law is not such a remedy where it is shown ineffective to prevent the continuance of the nuisance. (*City of Chicago v. Cecola* (1979), 75 Ill. 2d 423 (maximum fine of $200 insufficient to dissuade defendants from maintaining establishment offering sexual massages); *Village of Spillertown v. Prewitt* (1961), 21 Ill. 2d 228 (defendant, having been arrested twice, claimed before village board he would continue stripmining despite imposition of fines under ordinance); *People ex rel. Kerner v. Huls* (1934), 355 Ill. 412 (criminal prosecution inadequate remedy where defendant's statements showed that he would pay statutory penalties but still not submit his cattle for tuberculin test); *People ex rel. Dyer v. Clark* (1915), 268 Ill. 156 (numerous criminal convictions of keeper of brothel did not deter her from continuing the activity).

It was not shown here that criminal prosecution would not lend a remedy as clear, complete, practical, and effective as the equitable remedy. The city argues and the appellate court held that there was no adequate legal remedy because the defendants presented an allegedly obscene performance on August 23, 1978, despite the two previous arrests. The appellate court found it of significance that the record does not show any dispositions of the criminal actions begun following the arrests. (88 Ill. App. 3d 216, 219-20.) These factors, though, do not persuade us that a conclusion that there was no adequate legal remedy available may be drawn.

The injunction issued was coextensive with the criminal statute, so it did not seek to affect conduct beyond the reach of the statute. There is no contention by the city of Chicago that conviction and imposition of penalties available under the criminal obscenity law, which makes the first offense a misdemeanor and a second offense a felony, would be ineffective to deter the defendants' activities. The injunction was issued within a few months of even the first arrest at the theater and before the criminal proceedings were completed. It is not claimed that this is a case where a risk to public health would require expedited action by a court acting through its equity powers. We do not hold that an injunction action may not be hereafter brought against the defendants. We judge only that in this action it was not shown that criminal prosecution would be an inadequate remedy.

Thus, a common law nuisance action may be maintained against a theater operator presenting live exhibitions that are obscene under our criminal law of obscenity. An injunction, though, should not issue unless criminal prosecution is shown to be an inadequate remedy.

For the reasons given, the judgment of the appellate court that reversed the circuit court is affirmed.

*Judgment affirmed.*